Keith AYERS, Appellant,

v.

David L. DAVIS, Warden, Appellee.

Hugh McHenry WARNER, Appellant,

v.

David L. DAVIS, Warden, Appellee.

Bobby J. JONES, Appellant,

v.

Luther THOMAS, Warden, Appellee.

Paul J. PRYOR, Appellant,

v.

Luther THOMAS, Warden, Appellee.

Scott BROWN, Appellant,

v.

Luther THOMAS, Warden, Appellee.

Clyde W. COLES, Appellant,

v.

Luther THOMAS, Warden, Appellee.

Beecher BURTON, Appellant,

v.

Luther THOMAS, Warden, Appellee.

Court of Appeals of Kentucky.

April 10, 1964.

Certiorari Denied June 15, 1964.

See 84 S.Ct. 1891.

MONTGOMERY, Judge (dissenting).

Each of the above appeals is from a denial of habeas corpus sought by an indigent prisoner. In each case the lower court judgment of denial has been affirmed. In each instance this Court, by a majority opinion,[1] without consideration of the merits of the petition for habeas corpus, has held that a petitioner is not entitled to seek habeas corpus unless and until he has dem-

onstrated that the remedy available under RCr 11.42 is inadequate. I respectfully dissent on the ground that such holding constitutes a wrongful suspension of the privilege of the writ of habeas corpus, in violation of the United States Constitution, Article I, Section IX, and of the Kentucky Constitution, Section 16. This is an additional ground of dissent in Ayers v. Davis.

It should be unnecessary to be remindful of the importance and sanctity of habeas corpus. Mr. Justice Clark, in Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), said:

"* * * it is 'The highest remedy in law, for any man that is imprisoned.' 3 Howell's State Trials 95 (1628)."

As he pointed out, "We shall not quibble as to whether in this context it be called a civil or criminal action * * *." See distinctions made in Higbee v. Thomas, Ky., 376 S.W.2d 305.

The following comments by Mr. Justice Clark, in Smith v. Bennett, are pertinent:

"The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels. Ever since the Magna Charta, man's greatest right—personal liberty—has been guaranteed, and the procedures of the Habeas Corpus Act of 1679 gave to every Englishman a prompt and effective remedy for testing the legality of his imprisonment. Considered by the Founders as the highest safeguard of liberty, it was written into the Constitution of the United States that its 'privilege * * * shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.' Art. I, § 9. Its principle is imbedded in the fundamental law of 47 of our States. It has long been available in the federal courts to indigent prisoners of both the State and

1. Ayers v. Davis, Ky., 377 S.W.2d 154;
   Warner v. Davis, Ky., 377 S.W.2d 881;
   Jones v. Thomas, Ky., 377 S.W.2d 155;
   Pryor v. Thomas, Ky., 377 S.W.2d 156;
   Brown v. Thomas, Ky., 377 S.W.2d 156;
   Coles v. Thomas, Ky., 377 S.W.2d 157;
   Burton v. Thomas, Ky., 377 S.W.2d 155.

Federal Governments to test the validity of their detention. Over the centuries it has been the common law world's 'freedom writ' by whose orderly processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free. We repeat what has been so truly said of the federal writ: 'there is no higher duty than to maintain it unimpaired,' Bowen v. Johnston, 1939, 306 U.S. 19, 26, 59 S. Ct. 442, 446, 83 L.Ed. 455, and unsuspended, save only in the cases specified in our Constitution."

The specific problem in the seven cases before us is whether an indigent prisoner can be compelled to forego seeking relief by habeas corpus until he has shown that RCr 11.42 affords him no relief. The majority opinions hold specifically that the prisoner must first show that "the remedy by motion pursuant to RCr 11.42 is inadequate" before he is entitled to seek habeas corpus. In so far as the majority opinions prescribe such a limitation on the right to seek habeas corpus, this constitutes a suspension of the privilege which is unconstitutional and is outside the scope of RCr 11.-42.

The rule is admittedly intended to afford a remedy similar to the federal remedy under 28 U.S.C. § 2255. In the Ayers v. Davis opinion, it is pointed out that the federal statute expressly provides for a suspension of the right to habeas corpus under certain conditions, citing United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1951). However, that case affords little comfort. The Court expressly refused to pass on the constitutionality of Section 2255 involving the suspension of the writ of habeas corpus. In fact, research has disclosed no instance where such constitutionality has been passed on by the United States Supreme Court. All that was decided in Hayman was that the district court erred in determining factual issues without notice to the respondent and without his presence, and that the required hearing could be held under Section 2255. Thus, it does not sustain the proposition that the right to habeas corpus may be deferred. Hayman is distinguishable from our present cases on the further ground that the legislation providing for RCr 11.42 made no provision for suspension of the habeas corpus writ but re-enacted it, as will be discussed later.

The right of one illegally restrained to immediate relief is a characteristic of habeas corpus which has distinguished it through the centuries. For history of the writ, see McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). The reason therefor was well expressed by Denman, C. J., in Hayman v. United States, 9 CCA, 187 F.2d 456 (1951), as follows:

"One of the prime essentials of the imprisoned man to his right to seek the writ of habeas corpus is the prompt consideration of his application. Every day of wrongful imprisonment is that much taken from the free life of the prisoner."

The provisions for habeas corpus in Kentucky have traditionally preserved the right to a prompt consideration of the petition. In the old Criminal Code of Practice penalties were provided for refusal to issue the writ and for refusing obedience to it. Criminal Code, Sections 401, 409. Provisions for a speedy consideration were made. Criminal Code, Sections 403, 408, 413, 429-1.

The same legislative Act which contained the new Rules of Criminal Procedure abolished the old Criminal Code. Acts of 1962, Chapter 234. It was recognized therein that the old Code contained certain "subjects not properly within the scope of judicial rule-making," and in accordance therein the old Code provisions relating to habeas corpus were re-enacted substantially in Kentucky Revised Statutes, Chapter 419. This indicates that the General Assembly did not intend any infringement or en-

croachment on the constitutional right of habeas corpus.

The statutes so enacted indicate an intention on the part of the General Assembly which is directly contrary to the holdings in the majority opinions. The writ is made issuable "on any day at any time." KRS 419.020. The writ is to be served "at any time on any day." KRS 419.060(4). No stronger language can be used to indicate that the General Assembly intended that one seeking habeas corpus is to have immediate consideration. These statutes do not say that the writ and service may be deferred until after exhaustion of the remedy, RCr 11.42, which was enacted at the same time.

The statutes and the whole principle embodied in habeas corpus cry out for immediate action. The statutory language indicates that the person illegally restrained is entitled to seek action day or night, Sunday, weekday, or holiday. Indeed, this is as it should be, bearing in mind the admonition previously quoted that "Each day of wrongful imprisonment is that much taken from the free life of the prisoner."

This Court has always heretofore properly treated habeas corpus as an urgent matter. KRS 419.130(1) in part provides:

"Upon the filing of the appeal the clerk shall immediately deliver the papers to the Chief Justice, and the court shall proceed immediately to hearing thereof and complete the same as soon as practicable. If the court is in vacation at the time the appeal is filed, the Chief Justice shall call together a majority of the judges of the court who shall hear and determine the appeal as in regular session."

This is a re-enactment from Criminal Code, Section 429–1.

Habeas Corpus cases have always been treated as cases entitled to be advanced for early consideration. RCA 1.185. The majority holdings are not in accord with this rule or the statute.

The duty enjoined on each of us as judges under the law as it existed prior to the holdings in the majority opinions may well be expressed by this quotation from Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), as follows:

"A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.'"

A judge of a Kentucky court, trial or appellate, should be no less alert.

Thus, in summary, one who is illegally restrained is entitled to have the writ of habeas corpus issued and served at any time and to have immediate consideration in the trial or appellate court by a judge who is alert to see if the person so restrained is being deprived of one day from his free life. Nowhere is there any authority for depriving such person of this sacred right by resort to some other means first. In Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949), the failure of a state appellate court to hear a habeas corpus proceeding because of the availability of other remedies was cause for remand. The law on habeas corpus in Kentucky has followed a well-charted course. I feel that the Court should "track" the law.

The holdings in the majority opinions are, in effect, an unconstitutional suspension of the writ. To borrow a phrase, habeas corpus delayed is habeas corpus suspended.

For these reasons I am compelled to disagree with the majority opinions.