Joseph A. RINALDI, Plaintiff,

v.

Howard YEAGER, Warden, A. L. Dempsky, Business Manager N. J. State Prison, and Harry Lerner, Essex County, Treasurer, Defendants.

Civ. A. No. 70–64.

United States District Court
D. New Jersey.

Feb. 18, 1965.

Frederick B. Lacey, Newark, N. J., for plaintiff.

Nicholas F. Fernicola, Newark, N. J., for Harry Lerner.

Arthur J. Sills, Trenton, N. J., for Howard Yeager and A. L. Dempsky.

Before McLAUGHLIN, Circuit Judge, and MEANEY and SHAW, District Judges.

McLAUGHLIN, Circuit Judge.

This case is before us on a Stipulation of Facts on behalf of all the parties, filed September 24, 1964. From that stipulation we find the following facts.

Plaintiff is presently confined in New Jersey State Prison as the result of two separate convictions, the first in May of 1959, in which he was sentenced to an aggregate term of eight to ten years imprisonment. Plaintiff was given leave to appeal that conviction in forma pauperis. He petitioned for a transcript of the trial testimony which he was allowed. On July 13, 1959 he signed a State Prison form which stated that he had been informed that:

" * * * Should I obtain a copy of the transcript of my case and lose my appeal I shall, as provided in N.J.S. 2:152–18, be obliged to pay

for the transcript by having all of my institutional earnings withheld until that debt is paid." [1]

The Appellate Division affirmed plaintiff's 1959 conviction.

In May, 1960, plaintiff was tried and convicted under two new indictments. He was sentenced to terms of imprisonment of five to ten years on each of these, the sentences to run concurrently. He was allowed to appeal these convictions in forma pauperis and granted a transcript of the trial testimony. The convictions were affirmed by the Appellate Division. Petition to the New Jersey Supreme Court was denied as was application for certiorari to the United States Supreme Court, Rinaldi v. New Jersey, 371 U.S. 847, 83 S.Ct. 82, 9 L. Ed.2d 83.

In 1963 the Essex County Treasurer notified the State Prison Authorities that plaintiff's appeal from his 1960 convictions had been denied and asked that Rinaldi's institutional earnings be withheld in order to reimburse the County Treasurer in the amount of $215, the cost of the transcript. Since then plaintiff's said earnings of twenty cents a day have been withheld from Rinaldi and sent to the Essex County Treasurer

in accordance with the above referred to New Jersey statute.

On February 10, 1964 plaintiff filed this suit. In it he alleges that because his institutional wages are being withheld from him and turned over to the Essex County Treasurer to help pay for the trial transcript furnished him on his second appeal, he is being subjected to cruel and unusual punishment, he is being deprived of due process of law, discriminated against and denied equal protection of the law, all in violation of his Federal Constitutional rights. The defendants answered stating that they acted in accordance with the New Jersey law, citing the statute.

Counsel for plaintiff was assigned by Judge Meaney and thereafter filed a notice of motion for summary judgment and for an injunction against State enforcement of 2A:152–18. On November 16, 1964, Chief Judge Biggs in accordance with Section 2284, Title 28 United States Code, named this three judge court for the hearing and determination of this cause. Briefs were submitted on behalf of the parties and oral argument was had on February 1, 1965.

Both sides agree that under the Stipulation of Facts plus Admissions and An-

---

**1.** The New Jersey statute with which we are concerned is 2A:152–17, 18, 19, N.J. S.A., which read as follows:

"2A:152–17. Payment of transcripts for indigent defendants in criminal cases

"Any person convicted of any crime may make application under oath to any judge of the County Court or Law Division of the Superior Court of the county where the venue was laid showing that a copy of the transcript of the record, testimony and proceedings at the trial is necessary for the filing of any application with the trial court, and that he is unable, by reason of poverty, to defray the expense of procuring the same, and any such judge may, being satisfied of the facts stated and of the sufficiency thereof, certify the expense thereof to the county treasurer, who shall thereupon pay such expense, the amount thereof having been approved by the judge to whom such application was made. Where such person appeals to the Appellate Division of the Superior Court

and copies of the transcript of the proceedings in the trial court are needed therefor he may make a similar application to such court which, being satisfied of the facts stated and the sufficiency thereof, may certify the expense and amount thereof to the county treasurer who shall thereupon pay such expense. L.1956, c. 134, p. 555, § 1.

"2A:152–18. Reimbursement

"The county treasurer shall file a notice of said payment and the amount thereof with the institution in which said person, upon whose application the transcript of the record was prepared, is confined, and, to the extent of the expense incurred, the county treasurer shall be reimbursed from any institutional earnings of such person, in the event that the application for relief is denied by the trial court or an appellate court. L.1956, c. 134, p. 555, § 2.

"2A:152–19. Effective date

"This act shall take effect January 1, 1957. L.1956, c. 134, p. 556, § 3."

swers to Interrogatories there is no disputed material fact and that the suit is properly before this court for disposition on summary judgment.

On behalf of the plaintiff it is argued that he has been deprived of due process and equal protection under the Fourteenth Amendment. In addition it is urged that the reimbursement feature of the New Jersey statute violates the Thirteenth Amendment by forcing him to help pay for his transcript through his institutional wages.

What we are concerned with is a collateral situation which arose out of plaintiff's appeal from his 1960 convictions. On that appeal he was allowed to proceed in forma pauperis, he was then furnished with a copy of the trial testimony. The appeal was fully argued in the Appellate Division of the New Jersey State Court System. The decision going against him, plaintiff's appeal was presented to the State Supreme Court. Rejected there, it was taken to the United States Supreme Court on application for certiorari which was denied. Beyond all doubt, plaintiff was provided with the untrammeled means for complete appellate review, everything " * * * accorded to all who have money enough to pay the costs in advance." Griffin v. People of State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). Plaintiff legitimately took advantage of the means furnished by New Jersey and did obtain the full review to which he was entitled as a matter of equal justice. There is not the slightest intimation that he was hindered or hampered in any possible way as he moved forward with his appeal. He was given due process in letter and spirit. He was given the same protection available to the "rich" and the "powerful". In his situation there was no "age old problem." Griffin, supra, p. 16, 76 S.Ct. p. 589. Mr. Justice Black in Griffin, supra, p. 17, 76 S.Ct. p. 590, stressed that "Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" That central aim was achieved in the Rinaldi appeal. He stood on an equality with all people in taking his appeal and carrying it through our highest tribunal of justice, the United States Supreme Court. All of that is an accomplished fact. There is no genuine controversy before us regarding it. We are not constituted to render an advisory or academic opinion on some alleged problem that might have arisen in connection with 2A:152–18, N.J.S.A., prior to Rinaldi taking his appeal. That appeal is over and done with and nowhere within it was Rinaldi subjected to any violation of due process or equal protection. This is not the Griffin case. This is the salutary aftermath of that litigation wherein New Jersey made certain by law that her indigent prisoners would have available record transcripts for appeal purposes. The Griffin decision settled any possible quibbling about the necessity of equipping an indigent appellant in a criminal action with an adequate trial transcript. It gives such person equal treatment under our Federal law, not preferential treatment. It is no undue burden upon litigants who are able to do so, that they pay for transcripts which they obtain. In the instance before us, New Jersey, carrying out immediately the mandate of the Supreme Court, committed itself to furnishing its indigent prisoners with transcripts on appeal. The New Jersey law provided further that after the conclusion of an appeal and if a prisoner had finally lost out and remained in custody that the particular county be reimbursed for its transcript outlay, from his prison earnings.

It is that reimbursement element which is attacked as contrary to the Thirteenth Amendment. It is described as a discriminatory condition to the right of appeal, as penalizing an indigent because he is poor, as forcing the unsuccessful appellant into bondage, as against the maintenance of complete free and voluntary labor throughout the United States.

■ There is no mystery about the reimbursement phase before us. As we

have said, this only comes into being after appellant has pursued his appeal to its finality, has been unsuccessful and is still in confinement. In those circumstances the county becomes entitled to reimbursement from his institutional earnings. Obviously the reimbursement is within his means. It is from the sum the prisoner receives that reimbursement is to be had. The statute leaves the County a wide discretion regarding the amount it deducts from the prisoner's income. There is no proof before us whether prisoners are allowed extra items, such as smoking material, free or if the ordinary means of obtaining these is with their work pay. Whatever the situation we are entirely satisfied that the statutory provision for reimbursement is no violation per se of plaintiff's Federal Constitutional rights. The administration of the method and rate of reimbursement is rightly delegated to the reasonable discretion of the County Prison Authorities. There is no Federal cause of action made out here on the theory advanced. Plaintiff is definitely able to make installment payments for his transcript. This may inconvenience him. To perhaps numerous litigants in criminal actions on the outside paying for their transcripts may be just as inconvenient and more so. We do not see that this problem of paying within his means for his important trial record is inflicting hardship upon Rinaldi. Indeed, paying what he can towards the cost of something that was most necessary to him should be helpful to him retaining or reestablishing his self respect. In common fairness he should pay what he can. If for some good reason the entire amount of his pay is too much he can request an adjustment from the Prison Authority. The reimbursement of course has no bearing whatsoever on his sentence. Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L. Ed.2d 1209 (1959) has no applicability to this suit. There the court clerk would not file a prisoner's appeal motion papers absent the filing fee. In this instance all plaintiff's appeal papers were filed without cost. Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) is in the same category. There was no barrier, financial or otherwise, interposed in Rinaldi's appeal and his exercise of his fully recognized right to so appeal. The reference by plaintiff to Pollock v. Williams, 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095 (1944) is founded upon the erroneous premise that under the admitted facts Rinaldi has no obligation to, within his means, reimburse the County for his trial record.

■ Finally, complaint is made that granting for the sake of argument that the statute is not unconstitutional, its administration is discriminatory against the plaintiff because in some instances prisoners who have been given transcripts for their appeals are not being "subjected to reimbursement". Generally speaking, the question involved is New Jersey State and County business. Objection, if any, to the manner in which the statute is administered can be made through the proper New Jersey facilities. Even as to this it is difficult to see any discrimination against the plaintiff. His reimbursement has been handled in accordance with the statute. Assuming that on occasion reimbursement has not been insisted upon because of laxness or favoritism and there is no evidence of this before us, plaintiff is not being harmed, he is merely making reimbursement for his transcript in accordance with the law of New Jersey. His reimbursement is not increased one penny because of what may happen in other reimbursement circumstances.

Our Findings of Fact and Conclusions of Law clearly appear in this opinion and therefore will not be listed separately.

This litigation has been most competently prepared and presented by both sides. The court is particularly grateful to Frederick B. Lacey, Esq., assigned counsel for plaintiff, for his unselfish, exhaustive services on behalf of plaintiff.

The motion for summary judgment and for an injunction on behalf of plaintiff will be denied. Summary judgment will be granted in favor of the defendants and against the plaintiff.