Jimmy KITCHENS, Petitioner,

v.

STATE OF MISSISSIPPI, Mr. Thomas D. Cook, Superintendent, Mississippi State Penitentiary, Respondent.

Civ. A. No. 1468.

United States District Court
S. D. Mississippi, E. D.

Oct. 3, 1968.

Jimmy Kitchens, pro se.

Joe T. Patterson, Atty. Gen., State of Mississippi, by Guy N. Rogers, Asst. Atty. Gen., for State of Miss., and Thomas D. Cook, Supt., Mississippi State Penitentiary.

## OPINION OF THE COURT

NIXON, District Judge.

Petitioner, Jimmy Kitchens, incarcerated at the Mississippi State Penitentiary, filed a petition for writ of habeas corpus with the United States District Court in the Northern District of Mississippi, alleging that his detention was in violation of due process under the United States Constitution. This petition was transferred to the Southern District pursuant to 28 U.S.C. sec. 2241 (d). The writ issued and petitioner received a hearing on September 19, 1968,

appearing before the District Court in Biloxi without the assistance of counsel.

At the time of issuance of the writ of habeas corpus, petitioner was serving a seven-year sentence imposed by the Circuit Court of Jasper County, Mississippi, for burglary. The conviction was affirmed by the Mississippi Supreme Court. State v. Kitchens, 135 So.2d 180 (1961).

A key witness against the petitioner at the Jasper County trial was Benny C. Cochran, who was implicated along with Kitchens, Johnny Pearson, and Troy Jenkins in the burglary of the Jasper Co-operative in Stringer, Mississippi. Cochran entered a plea of guilty to the charges against him and subsequently received a suspended sentence of one year for his part in the crime. At Kitchens' trial Cochran testified in detail as to the events of the night of January 28, 1961, and of the early morning hours of January 29, the alleged time of the burglary. His testimony clearly implicated Kitchens, Pearson and Jenkins as co-conspirators in the crime. There was some discrepancy, however, in statements by Cochran prior to the trial as to Jenkins' involvement. Cochran initially indicated that Roy Strickland was the fourth participant in the burglary along with Kitchens, Pearson and Cochran. But Cochran retracted this statement and named Jenkins as the fourth co-conspirator instead of Strickland, his confusion arising from the similarity in the first names of Strickland and Jenkins, that is, "Roy" Strickland and "Troy" Jenkins.

Although Cochran testified that he had been drinking heavily and had passed out twice during the time period before and after the burglary took place, he testified in detail as to events surrounding the burglary, and this testimony was corroborated by other witnesses.

The petitioner here relies upon an affidavit made on October 25, 1965, by Benny C. Cochran which states that Kitchens was not involved in the burglary. Petitioner would show that a deputy sheriff promised Cochran a light sentence if he would implicate Kitchens and that Cochran did so. The affidavit names Roy Strickland as the fourth participant in the burglary in place of Kitchens. Petitioner argues that the Cochran affidavit shows that he was convicted on the basis of false testimony secured by promises of leniency to Benny Cochran and that his conviction was thus obtained in violation of the principles of due process as guaranteed by the United States Constitution.

Prior to resort to federal habeas corpus, the petitioner filed three habeas corpus writs in the Circuit Court of Jasper County, Mississippi, which were ignored, and a "motion for leave to file motion for new trial and other relief" in the Mississippi Supreme Court, which was denied. The State, however, alleges that Kitchens has not exhausted his state remedies as required by 28 U.S.C. Sec. 2254 because he has not filed a petition for Writ of Error Coram Nobis in the Mississippi Supreme Court. The Court finds this contention without merit, but holds that the petitioner is not entitled to relief in this proceeding.

I.

The petitioner appeared before this Court without counsel. Although he did not request counsel nor object to proceeding without counsel, the Court deemed the question of representation by counsel of sufficient import to raise the issue sua sponte.

The United States Supreme Court has not interpreted the Sixth Amendment right to counsel to require representation at postconviction proceedings such as habeas corpus. It has often been suggested that the right to counsel does not obtain in the habeas proceeding because habeas corpus is not criminal but primarily civil in nature. See Juelich v. United States, 342 F.2d 29 (5th Cir. 1965); Barker v. State of Ohio, 330 F.2d 594 (6th Cir. 1964). The Sixth Amendment guarantees counsel only in "criminal prosecutions." However, it has also been recognized that

the mere categorization of habeas corpus as a civil or criminal proceeding should not necessarily be determinative of the right to the constitutional guarantees accorded the criminal defendant. See Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). Nonetheless, when the issues raised by habeas corpus are well developed in the state court record, or the factual issues simple, there is no need to appoint counsel to aid in the prosecution of a habeas corpus petition. United States ex rel. Wissenfeld v. Wilkens, 281 F.2d 707 (2d Cir. 1960). Such is the case here. The testimony in controversy was fully developed in the state court and is preserved in the record of the trial. The affidavit by Benny C. Cochran recanting his testimony is before the Court. The Court is faced with a clear-cut question, one which does not depend upon development by an attorney for adequate presentation. Indeed, the State's attorney did not deem it necessary to argue on the merits of petitioner's writ.

This Court determined therefore that the appointment of counsel would not have materially aided petitioner's cause, and did not appoint counsel. Had the petitioner requested counsel, and/or the issues been complicated, the Court may have reached a different conclusion on this point. Petitioner, himself, stated in open Court that he did not feel that he needed counsel to assist him in presenting his case or developing any point in support thereof.

## II.

The petitioner is required by 28 U.S.C. Sec. 2254 to exhaust all remedies available in state court before seeking habeas corpus relief in the federal court. This rule is grounded on the principle of comity and embraces only those "state remedies still open to applicant at the time he files his application for habeas corpus." Fay v. Noia, 372 U.S. 391, 399, 83 S.Ct. 822, 827, 9 L.Ed.2d 837 (1963).

The postconviction remedies generally available to a criminal defendant in Mississippi do not include habeas corpus, which lies only where the convicting court was without jurisdiction. "A petitioner is not entitled to be released on a writ of habeas corpus, so long as the trial court has jurisdiction under a valid law and renders a valid judgment." Ledbetter v. Bishop, Miss., 210 So.2d 880, 882 (1968). However, Mississippi procedure does include two mechanisms by which a criminal defendant may secure postconviction review of his sentence: writ of error coram nobis, see Rogers v. Jones, 240 Miss. 610, 128 So. 2d 547 (1961), and by motion before the Supreme Court asking leave to file a motion for new trial in the convicting court, see Lang v. State, 230 Miss. 147, 92 So.2d 670 (1957).

The latter remedy was thoroughly considered in the *Lang* case in an excellent opinion by Judge Gillespie. There the petitioner filed a "motion for leave to file a motion for a new trial in the trial court, in the nature of a petition for a writ of error coram nobis," basing his petition on newly-discovered evidence. However, the court regarded the petition filed there as a motion and granted the petitioner leave to file a motion for new trial in the trial court because the "plainest principles of justice" demanded judicial inquiry. The Court stated that such relief by motion would continue to be available to criminal defendants in Mississippi, when certain circumstances enumerated in the opinion were present. The Court further noted that had a "simple motion or petition * * * displaced the writ [of error coram nobis] years ago it would have saved considerable confusion and better served the administration of justice." 92 So.2d at 673.

In the case at bar, petitioner sought postconviction review of his conviction via motion in the Supreme Court of Mississippi patterned after the motion in *Lang*. This motion was denied. The State contends that a petitioner must also seek review of his conviction by petition for writ of error coram nobis in order to exhaust his state remedies. This Court does not agree. The Mis-

sissippi Supreme Court clearly acknowledged its preference for the remedy by motion over the writ of coram nobis in the *Lang* case, and noted that such a postconviction motion was equally appropriate where coram nobis would lie as in a case where that remedy was not available. 92 So.2d at 675. The petitioner has thus tested his detention in the state courts in the manner deemed appropriate by the Mississippi Supreme Court. Moreover, the grounds urged by the petitioner here are in the nature of newly-discovered evidence, so that under the Mississippi rule coram nobis might not be available. See Wetzel v. State, 225 Miss. 450, 76 So.2d 846 (1955); Lang v. State, 230 Miss. 147, 92 So.2d 670 (1957).

The State relies on Knight v. State, Miss., 204 So.2d 568 (1967) to show that petitioner's proper state court remedy is by coram nobis and not motion. In that case petitioner raised the question of his detention "on motion to consider and review a sworn statement of a witness stating he testified falsely." In a brief opinion, the Mississippi Supreme Court granted the State's motion to dismiss stating that there was no provision for the Supreme Court's hearing of such a motion and suggesting that petitioner's remedy was to be found in Section 1992.-5, Miss.Code of 1942, Rec., citing the *Lang* case. The State accurately points out that Section 1992.5 deals with the remedy of coram nobis, requiring a petitioner whose conviction has been affirmed by the Supreme Court to first apply to the Supreme Court for leave to petition the trial court for a writ of error coram nobis. The State then contends that since Kitchens' petition here is based primarily on the sworn statement of a witness stating he testified falsely, as was the case in *Knight*, petitioner must look to Section 1992.5 for his remedy, as the Supreme Court suggested in *Knight*, and that therefore petitioner should proceed by writ of error coram nobis. The fallacy in the State's contention, however, is overlooking the *Lang* case, which was cited by the Mississippi Supreme Court in *Knight* in conjunction with the reference to Section 1992.5. *Lang* specifically incorporated the procedures of Section 1992.5 for use when a petitioner proceeds by motion, as well as in the case of coram nobis. The State contends that *Knight* means that any time a person seeking postconviction relief relies on the recanted testimony of a witness he must proceed by coram nobis; but the true meaning of that decision is that a petitioner for postconviction relief, whatever the grounds of his petition, must follow the procedures outlined in Section 1992.5. This is evident from the Supreme Court's citation of the *Lang* decision in conjunction with the reference to Section 1992.5.

The petitioner here complied with the procedures of Section 1992.5, advancing before the Supreme Court a "motion for leave to file motion for new trial and other relief." Contrariwise, the motion in the *Knight* case was "to consider and review a sworn statement of a witness stating he testified falsely." The petitioner in *Knight* thus did not comply with Section 1992.5 by asking leave to proceed in the trial court, but sought a direct review of the recanted testimony in the Supreme Court itself, which that court denied. Note that had the petitioner in *Knight* come back to the Supreme Court and asked for leave to proceed in the trial court, either by coram nobis or motion for new trial, in accord with the procedure outlined in Section 1992.5, the result may have been different; at any rate, a denial of relief by the Supreme Court would have been on a different basis, that is, such a denial would have been on the merits and not because petitioner sought the wrong remedy.

Here petitioner chose the correct vehicle to advance his claim in the state courts and the denial of his motion by the Supreme Court was on the merits, thereby exhausting his state remedies.

### III.

█ Consideration of Kitchens' petition to this Court, on the merits, reveals

that he was accorded a full and fair hearing in the Circuit Court of Jasper County. Kitchens was ably represented by counsel and the witness whose affidavit is now relied on, Benny C. Cochran, was extensively cross-examined by defense counsel.

Although Cochran, because of his admitted overindulgence in alcohol, did not recall some of the events on the night in question, nonetheless, he described in detail most of the events which took place. This testimony was corroborated by other witnesses at the trial. While Cochran demonstrated confusion as to the identity of the fourth participant in the burglary, this confusion involved only "Roy" Strickland and "Troy" Jenkins. Cochran at all times was certain in his implication of Kitchens as a participant in the crime, and actually, as the initiating force.

Moreover, the jury was specifically instructed that Cochran's testimony, as that of a co-conspirator, was to be viewed with "caution and suspicion."

In addition to Cochran's recanted testimony, Kitchens relies here on the subsequent guilty plea to a charge of false pretenses by the deputy sheriff who allegedly promised Cochran leniency if he would implicate Kitchens in the burglary. Kitchens alleges that this demonstrates the character of the deputy sheriff, and shows that he is the type person who would have promised leniency to Cochran in order to "get" Kitchens. However, Laurel City Police Sergeant Tommy Myers was also present when Cochran admitted his involvement in the crime and implicated Kitchens—and Myers, as well as the deputy sheriff, testified at the trial that no promises of leniency had been made to Cochran, nor were there any threats made in order to secure a confession from him or to induce him to implicate his co-conspirators.

This Court finds and holds that Kitchens received a full and fair hearing in the trial court, where the recanting witness Cochran was extensively cross-examined and the jury cautioned to view his testimony with suspicion. The mat-

ters relied on by Kitchens here do not convince the Court that he is entitled to relief. His detention is not the result of a violation of due process or of any "fundamental" law and his application for release via habeas corpus is accordingly denied.