UNITED STATES of America ex rel. John G. O'BRIEN C-8019, Appellant,

v.

J. F. MARONEY, Superintendent, State Correctional Institution at Pittsburgh, Pennsylvania.

No. 17970.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1969.

Decided March 31, 1970.

David N. Brook, Norristown, Pa., for appellant.

Richard A. Devlin, Asst. Dist. Atty., Norristown, Pa. (Stewart J. Greenleaf, Asst. Dist. Atty., Parker H. Wilson, First Asst. Dist. Atty., Milton O. Moss., Dist. Atty., Norristown, Pa., on the brief), for appellee.

Before GANEY, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

We are called upon to determine the consequences of a failure to appeal a state criminal conviction when appellant knew of his right to appeal, questioned his privately retained counsel about seeking appellate review, and realized that his counsel had no intention of filing and perfecting an appeal.

More than sixteen years ago, in September, 1953, appellant was arrested and charged with armed robbery, burglary, and violations of the Pennsylvania Firearms Act. Because he was imprisoned in a neighboring county awaiting trial on an unrelated charge, appellant was not present at the preliminary hearing in Montgomery County. In July, 1955—one and one-half years after indictment, but before trial—appellant moved to quash the indictment on the ground that there was unreasonable delay in bringing him to trial. The county court denied the motion and the Pennsylvania Supreme Court refused a petition for mandamus. Certiorari was denied by the United States Supreme Court.[1] In the meantime, appellant's absence at the preliminary hear-

---

1. For a summary of this pre-trial proceeding, see Commonwealth v. O'Brien, 181 Pa.Super. 382, 124 A.2d 666, 668 n. 1 (1956).

ing became the subject of a motion to quash which was prosecuted by his counsel who had been privately-retained by his parents. Again the county court denied the motion and appeals to both Pennsylvania appellate courts were unsuccessful.[2]

The case was tried to a jury in 1957. Appellant was convicted on all three charges and received a sentence of eight to twenty years imprisonment which commenced in 1965 at the conclusion of a previous sentence. In 1966 appellant filed a petition under the Pennsylvania Post-Conviction Hearing Act, 19 Purd. Stat.Anno. § 1180–1 alleging trial error in the admission of an involuntary confession, denial of the right to appeal, and foreclosure of appellate review by the commonwealth's failure to provide notes of testimony. The county court dismissed the petition and the state superior court affirmed.[3] A petition for allocatur and a subsequent request for reconsideration were both denied by the Pennsylvania Supreme Court.

Finally, on December 31, 1968, appellant filed in the district court a petition for writ of habeas corpus, the denial of which is the basis of this appeal. We come, then, to the critical issue before us: Was appellant denied the right to appeal his criminal conviction?[4]

At the district court hearing appellant testified that immediately following the verdict in November, 1957, he asked his private counsel "to appeal the verdict right then and there and at that time he told me it would be futile, that he didn't see where it could be reversed on anything." To the question, "[d]id you answer him when he told you to appeal would be futile?" appellant responded: "He [counsel] stood up and moved— asked the judge for sentencing right then, and then I turned around and called to my family to have them talk to [him]." Following sentencing, appellant "[a]sked him to appeal again" and was again told that an appeal "would be futile".

On cross-examination appellant acknowledged that he was aware of the availability of appellate review, for he stated: "It wasn't a question of money or anything else at that point. The question was, I thought the testimony given at my trial could have been appealed." He further testified that no one prevented him from taking an appeal, that he made no independent effort to perfect an appeal, and that it was not until March, 1962—nearly five years after the appeal period had expired—that he first sought review of his conviction by writing for a trial transcript and subsequently filing a post-conviction petition.

Appellant's trial counsel also testified at the district court hearing, and his recollections of the post-trial conversations were essentially the same as appellant's. Moreover, he explained that appellant's family "either contacted me by phone or by letter and I replied that the appeal will be useless." Appellant's mother stated that after receiving counsel's reply on the question of appeal the family decided to

---

2. The superior court held that under Pennsylvania law a defendant has no absolute right to be present at the preliminary hearing. Commonwealth v. O'Brien, note 1 *supra.* Characterizing the denial of the motion to quash as interlocutory, the supreme court declared the matter non-appealable. Commonwealth v. Laughlin, 389 Pa. 109, 132 A.2d 265 (1957) (per curiam).

3. Commonwealth v. O'Brien, 88 Montgomery L.Rptr. 335 (1967), aff'd., 211 Pa.Super. 765, 238 A.2d 37 (1968) (per curiam).

4. Also presented in this appeal is the claim that the state introduced an involuntary confession, and the repeated allegation that the proceedings were defective because appellant was not present at the preliminary hearing. Both of these issues have been decided against appellant in the state hearing and on the appellate level (see notes 2 and 3, *supra*), and in the district court. Our own independent review of the record and authorities does not persuade us that these determinations were erroneous. In the view we take of this case, it is not necessary to reach the question of the present non-availability of a trial transcript.

"just let it drop there". To further questioning she responded:

Q. Did you have any further correspondence or conversation with [appellant] about trying to get hold of [counsel]?

A. Yes. We talked about it but nothing really came of it.

Q. Did you ever try to contact any other lawyers?

A. No.

Q. Did you ever contact the court?

A. No.

Q. Did you ever contact the district attorney's office?

A. No.

From the lengthy history of these proceedings emerge three inescapable conclusions. First, appellant knew of his right to appeal. Having pursued and exhausted appeals in both pre-trial attacks on his indictment, he can hardly claim unfamiliarity with the availability of appellate review. Indeed, his testimony in the district court hearing clearly demonstrated that he was aware of his post-trial rights. Second, appellant had the assistance of privately retained counsel at the post-trial stage. At his side was the same attorney who had been a veteran of his pre-trial forensic wars in both appellate courts of Pennsylvania, and who had defended him at trial. Third, appellant fully understood that his attorney did not intend to appeal. Both he and his family had been told that an appeal would be "futile" or "useless," and both realized that no further action was contemplated by counsel.

What the record in this case does not clearly establish, however, is the financial condition in which appellant and his family found themselves during the appeal period. At best, the record on this point is inconclusive, for although appellant stated that his failure to appeal "wasn't a question of money", one of his answers on re-direct examination suggests that he was indigent.

Q. [T]he district attorney asked you why you did not take an appeal, and your answer was, not a question of money. Did you have money with which to take an appeal?

A. No sir. As I pointed out, my family took care of the initial fee for my attorney. And it never entered my mind about the money object of it. All I was interested in was appealing. I felt I got convicted on testimony that was introduced.

Moreover, certain testimony by his mother also indicates that the family had exhausted its financial resources.

A. Well, John [appellant] you know, told us to get in touch with [counsel] and, you know, ask him to appeal, and I called repeatedly but I couldn't get in touch with him and I found out, you know, that he had another office which he was doing more business than Norristown so he was there more than Norristown so, you know, the amount of days that you have to appeal passed by and I know somehow or other we just didn't have the money and just let it drop there.

 The courts have exhibited an increasing sensitivity to the constitutional rights of indigent defendants at the critical post-trial stage. No longer can there be any doubt that a state's obligation to furnish counsel is not discharged when the verdict is read and sentence is imposed. The equal protection clause and the due process incorporation of the sixth amendment require that an indigent be afforded the assistance of legal counsel at every critical stage throughout the criminal process. And to insure the effectiveness of such assistance, the appointed trial attorney has been charged with the duty of respecting his client's desire to file an appeal, even if in his best professional judgment the appeal is utterly without merit.[5]

---

5. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1968). "Of course, if counsel finds his [client's] case to be wholly frivolous * * *, he should so advise the court and request permission to withdraw. That request, must,

■■ Similarly, the courts have addressed themselves to particular areas of interest where there is privately retained counsel. From the majority of cases which have analyzed the consequences of a failure to appeal where the defendant is represented by privately retained, non-appointed counsel, we discern the following: (a) where there is knowledge of the right to appeal, there can be a knowing and calculated decision not to appeal which becomes binding upon the defendant;[6] (b) where there is such a decision, its efficacy is not diluted simply because the advice of counsel was improvident or imprudent;[7] (c) to relieve the defendant of the consequences of being bound by those decisions of his private counsel in which he has acquiesced, there must be a showing of "misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interests".[8]

■■ When there is representation by privately retained, non-appointed counsel, the mandate of the sixth amendment is implemented not by action of the state, but by action of the individual defendant. The state is not involved in the process of selecting counsel, for the defendant himself achieves the precise objective set forth in the cases proclaiming that an indigent is entitled to have the state furnish that which he cannot afford: counsel to represent him.[9] Accordingly, equal protection considerations are not apposite. After an appearance has been entered by private counsel, the state is normally absolved of any responsibility to concern itself in a supervisory fashion with the problems of representation. The very nature of the private attorney-client relationship, brought into existence by the deliberate choice of the defendant, justifies an assumption that the defendant will be the recipient of professional advice. So long as the defendant is, in fact, represented by private counsel at the critical appeal stage, the state generally has no duty—indeed, no authority—to interfere with the attorney-client relationship.

■ Only when the professional conduct of non-appointed counsel breaches minimum standards of professional responsibility—when the conduct is so lacking in competence or good faith that it shocks the conscience of the court or prosecutor as officers of the state—can it be said that the defendant has been de-

however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* at 744, 87 S.Ct. at 1400.

6. Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947).

7. Dodd v. United States, 321 F.2d 240 (9 Cir. 1963); Dennis v. United States, 177 F.2d 195 (4 Cir. 1949).

8. Kennedy v. United States, 259 F.2d 883, 886 (5 Cir. 1958).

9. Since its celebrated decision in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court has consistently required that state appeal procedures provide "means of affording adequate and effective appellate review to indigent defendants." *Id.* at 20, 76 S.Ct. at 591. Thus, in *Griffin* it was held that the state could not deny an indigent a trial transcript as a predicate to appellate review where the same was available to any defendant with sufficient funds to purchase one. In Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d

1209 (1959), the Court ruled that a state could not require the filing of a $20.00 fee as a precondition for review. Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L. Ed.2d 39 (1961), extended these principles to state post-conviction proceedings. In Eskridge v. Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) and Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774 (1963), a denial of equal protection was found where the trial judge was given the power to withhold a trial transcript from an indigent upon the determination that an appeal would be without merit. Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed. 2d 892 (1963), held that an indigent could not be refused review of the denial of a writ of error coram nobis on the grounds of his inability to file a transcript of the proceedings in the lower court. And in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Court ruled that the state must provide indigent defendants with the assistance of counsel on direct appeal.

nied due process. Such denial is predicated on the recognition that the state, through the judge or the prosecutor, has permitted the proceedings to continue despite knowledge that the professional representation by private counsel is so deficient as to constitute no representation by counsel as guaranteed by the sixth amendment.

We do not have before us a case in which "self-retained counsel [was] so inadequate and incompetent as to deprive the accused of representation and reduce the trial to a sham in deprivation of his rights to due process of law." [10] At no time in the long history of proceedings in this case has appellant questioned the quality of representation he received at trial. Nor is this a case in which counsel fraudulently led his client to believe that an appeal was being processed,[11] or in which counsel simply abandoned the appeal after his client's financial resources were exhausted.[12] There is absolutely no evidence that appellant was at any time deceived by his attorney. In brief, the record is barren of any showing of "misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interests."

 If anything, the record discloses that appellant agreed with and acquiesced in his counsel's decision not to file an appeal. As we have previously observed, appellant had knowledge of his right to appeal. He participated in a

discussion with counsel about the possibility of appealing the conviction, and it was his attorney's advice that an appeal would be "futile". Appellant then failed to initiate *any* review of his conviction until five years after the appeal period had expired, even though, as he testified in the state post-conviction hearing, no one had prevented him from filing an appeal and he had made no attempt to seek appellate review.

A final consideration must command our attention. Because the record is inconclusive on the question of appellant's indigency following trial, we must decide whether there would have been a denial of equal protection if appellant had in fact been indigent at the appeal stage.

A careful examination of the record discloses no evidence that the district attorney, the court, or any other agency of the state was advised that appellant wished to appeal or that he was thwarted because of his financial inability to retain counsel. On the contrary, a fair reading of the record compels the conclusion that appellant's first communication with any representative of the state regarding a possible review of his conviction did not take place until the written request for a copy of the trial transcript was directed to the trial court some five years after the appeal period had expired.

 Therefore, the more specific question is posed: Assuming appellant's

10. Wilson v. Phend, 417 F.2d 1197 (7 Cir. 1969) *citing* Lunce v. Overlade, 244 F. 2d 108 (7 Cir. 1957). In *Wilson*, the court remanded for an evidentiary hearing to determine whether there had been a denial of effective representation of counsel. The misconduct charged included: counsel's change of defendant's plea without his prior knowledge or consent, the refusal of counsel to present alibi witnesses and other exculpatory evidence, the failure of counsel to file a timely motion for a new trial, and the conflict of interest between counsel's representation of defendant and his ownership and participation in the publication of a local newspaper in which defendant received prejudicial publicity.

11. In *Atilus v. United States*, 406 F.2d 694 (5 Cir. 1969), the defendant was not bound by his private counsel's failure to appeal, for his attorney had led him to believe that an appeal was being processed. The court held that the attorney had been guilty of fraud and deceit. Calland v. United States, 323 F.2d 405 (7 Cir. 1963). In Camp v. United States, 352 F.2d 800, 801 (5 Cir. 1965), the Fifth Circuit adopted the Sixth Circuit's rule "[t]hat appellant will be entitled to his out of time appeal if, and only if, he is able to show that his employed counsel failed through fraud or deceit to appeal."

12. Goforth v. Dutton, 409 F.2d 651 (5 Cir. 1969). See Wilson v. State, 445 S.W. 2d 745 (Tex.Crim.App.1969).

indigency, and assuming further that the court was unaware of his indigency, did the court's failure to affirmatively inquire about appellant's financial status and his desire to appeal, and to appoint counsel for the purpose of appeal, amount to a denial of equal protection of the laws?

As we have previously observed, the relationship between privately retained counsel and his client is one in which the state has no role or participation. The critical distinction between privately retained and court-appointed counsel led the Fifth Circuit in Pate v. Holman, 341 F.2d 764, 773 (5 Cir. 1965) to hold that

> when a defendant has retained counsel of his own choosing the State cannot be held to have violated the constitutional right of an indigent to counsel on appeal, unless the need for appellate counsel is brought home to the State, either by the defendant's request for appellate counsel or because a responsible State Official has actual knowledge that the defendant is indigent and desires to appeal his conviction.

This position has been repeatedly reaffirmed by the Fifth Circuit. Hutson v. Zeigler, 362 F.2d 200 (5 Cir. 1966); Beto v. Martin, 396 F.2d 432 (5 Cir. 1968); Harris v. Beto, 399 F.2d 679 (5 Cir. 1968) and Goforth v. Dutton, 409 F.2d 651 (5 Cir. 1969).

Most recently, however, a contrary position has been taken by a majority of the Second Circuit in United States ex rel. Smith v. McMann, 417 F.2d 648 (2 Cir. 1969). Overruling its prior decision in Bjornsen v. LaVallee, 364 F.2d 489 (2 Cir. 1966), the *en banc* court held that "the only practical, logical and fair interpretation to be given to Douglas v. California [372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811] is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal

without expense to him by counsel appointed by the state, if he is indigent." 417 F.2d at 654. In dissent, Judge Friendly, joined by Chief Judge Lumbard and Judge Moore, found no state action in denying an appeal since "[the state] had no way of knowing that, as [appellant] claims, he would have liked to appeal if he had known he could." *Id.* at 658.

The rationale of Douglas v. California, *supra*, begins with the basic premise that the state has knowledge of the fact of indigency: "The record shows that petitioners requested, and were denied, the assistance of counsel on appeal, *even though it plainly appeared they were indigents.*" 372 U.S. at 354, 83 S.Ct. at 815 (Emphasis supplied.) Similarly, in Griffin v. Illinois, *supra*, upon which the rationale of *Douglas* is firmly anchored, the petitioners informed the state "that they were 'poor persons with no means of paying the necessary fees to acquire the Transcript and Court Records needed to prosecute an appeal * * *.' These allegations were not denied." 351 U.S. at 13, 76 S.Ct. at 588. Certainly these landmark cases impose affirmative duties upon the state to furnish indigents the protections which are available to those endowed with financial means. But we do not read these cases to suggest the presence of a threshold obligation of the state to inquire about the financial means of one who appears at trial with privately retained counsel and thereafter offers no indication that his financial resources have been exhausted. To add such a gloss to the precise holding of *Douglas* would have a profound effect on the administration of justice, full retroactivity having been accorded the *Douglas* ruling. Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964). It could be the basis for a re-examination not only of many state cases, but also of those processed in the federal courts prior to the 1966 amendment to Fed.R. Crim.Pro. 32.[13]

---

13. (2) *Notification of Right to Appeal.*
After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the

In his dissent in United States ex rel. Smith v. McMann, *supra,* Judge Friendly reasoned:

I would not deny that a state's duty may sometimes be so compelling that continued inaction can fairly be regarded as violating the Fourteenth Amendment. But I see no justification for holding that in 1959 New York should have perceived a constitutional duty on its part to make certain that a convicted defendant whom it had no reason to believe to be indigent should be advised what New York would do for him if he were.

417 F.2d at 658. Nor do we see any justification for holding that such perception was required of a Pennsylvania court in 1957.

We find the rule followed by the Fifth Circuit and by the dissent in the Second Circuit persuasive and sensible, especially as it relates to convictions which had become final long prior to the *Douglas* decision.

In sum, we conclude first, that the facts portrayed here demonstrate an unequivocal "relinquishment [and] abandonment of a known right", Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), U. S. ex rel. Bolognese v. Brierley, 412 F.2d 193 (3 Cir. 1969); and second, that appellant was not denied equal protection where he was represented at trial by private counsel and the state had no information or notice that

the services of court-appointed counsel might be required for appeal.

The judgment of the district court will be affirmed.[14]

SEITZ, Circuit Judge (concurring).

I am satisfied from my reading of the record that appellant's counsel abandoned him after the verdict without in any way attempting to elicit his desires concerning an appeal and without filing the post-trial motions prerequisite to an appeal in compliance with his contract with appellant. In my view such conduct was tantamount to a refusal to initiate an appeal and deprived appellant of effective assistance of counsel. If counsel had been appointed by the court, appellant would be entitled to relief even though he did not inform the court within the statutory period of his desire to appeal. Because appellant retained his counsel, decisions of this circuit require that there be some actual or constructive notice to the state before he can be afforded relief. United States ex rel. Wilkins v. Banmiller, 325 F.2d 514 (3rd Cir. 1963); United States ex rel. Darcy v. Handy, 203 F. 2d 407, 426 (3d Cir. 1953) (en banc). I do not believe justice is served by distinguishing between litigants on the basis of whether they or the state pays the counsel fee. However, such is the rule in this circuit and because I am constrained to follow it, I concur in the result in this case.

cost of an appeal to apply for leave to appeal in *forma pauperis.* If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant.

It is particularly difficult to condemn Pennsylvania for inaction in 1957 when, as Judge Friendly observes, "it was not until 1966 that the Supreme Court brought its own rule governing federal criminal appeals in line with what the majority holds to have been constitutionally required all along." United States ex rel. Smith v. McMann, *supra,* 417 F.2d at 659 (dissenting opinion).

14. We affirm for reasons different from those expressed by the district court which found no abandonment of the right

to appeal and relied, as does appellant, on Commonwealth ex rel. Cunningham v. Maroney, 421 Pa. 157, 218 A.2d 811 (1966). This reliance is misplaced. First, that case dealt with the duties of appointed counsel. Second, trial counsel "informed appellant that no basis for appeal was present absent the discovery of new evidence." Hence, he "failed to apprise appellant of other grounds upon which an appeal could be predicated." The court concluded that "[s]o long as a possibility of such misimpression exists, we are unable to conclude that appellant's acquiescence constituted an 'intentional relinquishment or abandonment of a known right.'" (citation omitted) 218 A.2d at 813. Appellant in this case was not handicapped by any such "misimpression" or misapprehension of his rights.