COMMONWEALTH *vs.* ARTHUR A. GAUTHIER.

Essex.   December 7, 1971. — March 14, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Appeal.

Where the defendant in a criminal case had been represented by retained counsel until the end of his trial and following his conviction and sentence failed to appeal, there was no error in the denial of a motion for a new trial, filed fifteen years later, on the ground that the trial judge had failed to inform the defendant that he had a right to appeal and a right to court appointed counsel to prosecute the appeal.   [395–397, 400–401]

THREE INDICTMENTS found and returned in the Superior Court on January 14, 1955.

The cases were tried before *Cahill,* J., and a motion for a new trial was heard by him.

*Alexander Whiteside, II (Reuben Goodman* with him) for the defendant.

*Peter F. Brady,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   On February 16, 1955, the defendant Gauthier was found guilty by a jury after being tried jointly with codefendants Donald F. Boisvert, Edward R. Beaulieu and Robert E. Weaver under G. L. c. 278, §§ 33A–33G, on indictments charging each with murder in the second degree, robbery, and conspiracy.[1] Gauthier did not appeal.   The three codefendants were found guilty on all the indictments except Boisvert who was found not guilty on the murder indictment.   On appeal by the three codefendants judgments were affirmed.[2]   Gauthier filed a motion for a new trial on November 19, 1969 (almost fifteen years after the trial), and a hearing was held on November 24, 1970, under the authority of G. L. c. 278, § 29 (see *Earl* v. *Commonwealth,* 356 Mass. 181).   The motion was denied, and the defendant appeals on the following grounds:

(1) Counsel failed to prosecute an appeal; the defendant was not advised of his right to court appointed counsel on appeal; and in the absence of a knowledgeable and intelligent waiver of his right of appeal, the defendant was denied equal protection under the Fourteenth Amendment to the United States Constitution. (2) An instruction on involuntary manslaughter was required by the evidence.   (3) Supplementary instructions were improperly given to the jury in the defendant's absence without his effective waiver.

In the defendant's motion for a new trial he stated in part: "The facts of the event leading up to and including the incident which resulted in the death of the victim are aptly set forth in *Commonwealth* v. *Beaulieu, supra.* There is little need for elaboration of the facts at this

---

[1] From the record before us it is clear that the victim died as a result of unprovoked and brutal attacks on him, including kicking and punching while he was on the ground, resulting in two ruptures of the abdomen.   At least the initial attacks were made in robbing the victim.

[2] *Commonwealth* v. *Beaulieu,* 333 Mass. 640, cert. den. sub nom. *Weaver* v. *Massachusetts,* 351 U. S. 957, cert. den. sub nom. *Boisvert* v. *Massachusetts,* 352 U. S. 857.

point concerning the certain issues of law presented
herein." The judge who heard the motion also presided
at the original trial, and the entire transcript of that
trial was admitted without objection at the hearing.

The defendant contends that even if he had been aware
of his right to appeal, this was an empty formality since
he was not advised of his right to appointed counsel on
appeal. The pertinent evidence at the hearing on the
defendant's motion was as follows. The defendant was
represented at his trial by Mr. John R. Murphy (now
deceased) and he was assisted in the preparation and
certain other aspects of Mr. Alphonse S. Bachorowski
who at one time had practised law with the defendant's
father until his death in the 1940's. At the time of the
trial, Mr. Murphy and Mr. Bachorowski were office
associates. Mr. Bachorowski first became interested in
the case at the request of the defendant's sister. He then
arranged with Mr. Murphy, who is acknowledged to
have been a capable trial lawyer, to undertake the case.
Neither was appointed by the court and neither received
any compensation.

After the defendant's conviction Mr. Bachorowski and
Mr. Murphy informed the defendant of his right to ap-
peal and told him that neither of them would represent
him further. Mr. Bachorowski testified: "We told him
what his rights were, that he had a right to appeal from
the findings and verdict made by the Court and he had
a right of twenty days to file that appeal. We also said,
'You have a right of appeal to the Appellate Division
from the sentence given you in this court. We will no
longer represent you.' That was the end of it."[3] No
appeal was filed on behalf of the defendant by Mr.
Bachorowski or by Mr. Murphy. A contributing factor
in the decision was their opinion "that an appeal would
not avail him and would not change the verdict." Mr.

---

[3] In an earlier part of his testimony, Mr. Bachorowski stated: "He
was advised of the right of appeal, he was advised of his rights to go
to the Appellate Division in changing the sentence, if he saw fit, that
both Mr. Murphy and I were no longer going to be associated as
counsel to go forward."

Bachorowski also testified that "Murphy's opinion was that . . . if he took an appeal, there was not enough evidence in there to upset the findings made by the jury."

In denying the defendant's motion for a new trial the judge found that "the defendant in testifying he was not properly and fully advised regarding his rights of appeal by his original counsel, Attorney John R. Murphy, deliberately and intentionally lied to this court . . . [and that] the defendant must have been completely aware of the appeals being taken by his pals, the codefendants, and hence knew all he needed to know if indeed he ever intended or wanted to appeal. The blunt truth of the matter is that he and his attorney had concluded that an appeal, if taken, would be fruitless." There was no evidence that the defendant was informed that he had a right to appointed counsel to prosecute his appeal.[4]

Whether a defendant who is represented by retained counsel has a constitutional right to be informed of his right to appeal with the assistance of appointed counsel raises a question of first impression in this Commonwealth, and conflicting viewpoints have arisen in other jurisdictions.

The Supreme Court in *Douglas* v. *California*, 372 U. S. 353 (1963), reh. den. 373 U. S. 905, held that an indigent defendant has the right to appointed counsel on appeal.[5] This decision was given retroactive effect in *Smith* v. *Crouse*, 378 U. S. 584 (1964).

In *United States ex rel. Smith* v. *McMann*, 417 F. 2d 648 (en banc) (2d Cir.) cert. den. sub nom. *McMann* v. *Smith*, 397 U. S. 925, the majority stated: "We think the only practical, logical and fair interpretation to be

[4] It should be noted that the defendant was tried and convicted eight years before *Gideon* v. *Wainright*, 372 U. S. 335, and *Douglas* v. *California*, 372 U. S. 353.

[5] This is no longer a problem in the Federal courts with the adoption of Rule 32 (a) (2) of the Federal Rules of Criminal Procedure (1970) which states: "After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in *forma pauperis*."

given to *Douglas* v. *California* is that it imposes upon
the state a duty to warn every person convicted of crime
of his right to appeal and his right to prosecute his
appeal without expense to him by counsel appointed by
the state, if he is indigent. The right to appeal at the
expense of the state is mere illusion if the convicted
indigent defendant does not know such a right exists.
And the one way to make sure that he does know is to
tell him so." *Id.* at 654.

The court based its decision on equal protection of
the laws. It stated, "It is enough to establish the pris-
oner's right to federal collateral relief that by reason
of his indigence he has been deprived of his right to
appeal by the *action or inaction* of the judicial instru-
mentalities of the state in which the judgment of con-
viction was entered" (emphasis added). *Id.* at 654.

The court set forth that two basic factors must be
present: "[T]he fact of indigence at the time of sentence
and the fact that the prisoner did not know he could
appeal without expense to himself." *Id.* at 655.[6] This
rule was followed by the Sixth Circuit in *Goodwin* v.
*Cardwell*, 432 F. 2d 521.

The Third and Fifth Circuits have taken a contrary
view. Their position is that "when a defendant has *re-
tained* counsel of his own choosing the State cannot be
held to have violated the constitutional right of an in-
digent to counsel on appeal, unless the need for appellate
counsel is brought home to the State, either by the de-
fendant's request for appellate counsel or because a
responsible State official has actual knowledge that the
defendant is indigent and desires to appeal his convic-
tion" (emphasis added). *Pate* v. *Holman*, 341 F. 2d 764,
773 (5th Cir.), modified 343 F. 2d 546 (5th Cir.).[7]

---

[6] The court stated that "the sound application of the doctrine of
*Douglas* v. *California* . . . must be *to grant relief irrespective of the
existence or nonexistence of implementing state or federal procedures,*
provided only that the two operative factors are present" (emphasis
added). *Id.* at 655.

[7] The court further stated: "|A]n indigent's right to appellate counsel,
which Douglas recognizes as an 'absolute' right guaranteed under
both the Equal Protection Clause and the Due Process Clause, is not

Accord, *Beto* v. *Martin,* 396 F. 2d 432, 434 (5th Cir.) ; *Gregory* v. *United States,* 446 F. 2d 498, 499 (5th Cir.). See *United States ex rel. Smith* v. *McMann, supra,* at 657–659 (Friendly, J., dissenting) ; *Goodwin* v. *Cardwell, supra,* at 523–529 (O'Sullivan, J., dissenting).

The Third Circuit in *United States ex rel. O'Brien* v. *Maroney,* 423 F. 2d 865, found the position taken by the Fifth Circuit and "the dissent in the Second Circuit persuasive and sensible, especially as it relates to convictions which had become final long prior to the *Douglas* decision." [8] *Id.* at 872. The court did not interpret the *Douglas* case "to suggest the presence of a threshold obligation of the state to inquire about the financial means of one who appears at trial with privately retained counsel and thereafter offers no indication that his financial resources have been exhausted." *Id.* at 871. [9]

The distinction between the two positions is grounded on the concept of State action. There is no doubt that where the defendant has court appointed counsel at trial he is to be afforded appointed counsel for purposes of appeal. See *Anders* v. *California,* 386 U. S. 738. With representation by retained counsel, "[T]he mandate of the sixth amendment is implemented not by action of the state, but by action of the individual defendant." *United States ex rel. O'Brien* v. *Maroney, supra,* at 869.

---

absolute in the sense that the right to trial counsel is absolute. It is not necessary that the trial judge initiate action toward the appointment of appellate counsel by advising a convicted person of his rights or by making any inquiry as to his indigency, although such minimal action at the time of sentencing seems highly desirable." *Id.* at 775.

[8] The court was in agreement with the following from the dissent in the *McMann* case : "I would not deny that a state's duty may sometimes be so compelling that continued inaction can fairly be regarded as violating the Fourteenth Amendment. But I see no justification for holding that in 1959 New York should have perceived a constitutional duty on its part to make certain that a convicted defendant whom it had no reason to believe to be indigent should be advised what New York would do for him if he were." *United States ex rel. O'Brien* v. *Maroney, supra,* at 872, citing *United States ex rel. Smith* v. *McMann, supra,* at 658 (dissenting opinion).

[9] The court placed weight on the "profound effect on the administration of justice" if adding "such a gloss to the precise holding of *Douglas*" considering full retroactivity had been "accorded the *Douglas* ruling." *Id.* at 871.

"State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant *when he has knowledge of the defendant's indigency and desire for appellate counsel.* When an accused person retains counsel on the original trial, the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal.[10] But that presumption is rebuttable"[11] (emphasis added). *Pate* v. *Holman,* 341 F. 2d 764, 775 (5th Cir.). Accord, *Harris* v. *Beto,* 392 F. 2d 191 (5th Cir.) ; *Worts* v. *Dutton,* 395 F. 2d 341 (5th Cir.) ; *Langford* v. *Alabama,* 422 F. 2d 760 (5th Cir.), cert. den. 400 U. S. 851. Consequently "misfeasance by privately retained counsel is not state action and therefore does not constitute a deprivation of due process or equal protection."[12] *McGriff* v. *Wainwright,* 431 F. 2d 897, 899 (5th Cir.). See *Harris* v. *Beto, supra; Worts* v. *Dutton, supra.*

Here, the defendant was represented by retained counsel at the trial. We are of the opinion that there was no obligation on the part of the trial judge to inform the defendant after conviction and sentence that he had a right of appeal and to court appointed counsel to prosecute the appeal. We find the cases in the Third and Fifth Circuits discussed above persuasive on this point as we do the dissenting opinion of Judge Friendly

---

[10] "After an appearance has been entered by private counsel, the state is normally absolved of any responsibility to concern itself in a supervisory fashion with the problems of representation. The very nature of the private attorney-client relationship, brought into existence by the deliberate choice of the defendant, justifies an assumption that the defendant will be the recipient of professional advice." *United States ex rel. O'Brien* v. *Maroney, supra,* at 869.

[11] The last sentence in the quotation, "But that presumption is rebuttable," was deleted in a recent opinion of the Fifth Circuit in *McGriff* v. *Wainwright,* 431 F. 2d 897, 899 (5th Cir.), and was noted in *Robinson* v. *Henderson,* 316 F. Supp. 1241, 1245 (E. D. La.).

[12] This does not include an instance "when the conduct is so lacking in competence or good faith that it shocks the conscience of the court or prosecutor as officers of the state." *United States ex rel. O'Brien* v. *Maroney, supra,* at 869.

(joined by Chief Judge Lumbard and Judge Moore) in *United States ex rel. Smith* v. *McMann, supra.*

There was no error in the denial of the defendant's motion for a new trial.

*Order denying motion for new trial affirmed.*