**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0187-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MIGUEL A. DELACRUZ,
a/k/a MIGUEL DELACRUZ,

    Defendant-Appellant.

_____

Submitted February 10, 2021 – Decided June 21, 2021

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-03-0137.

Joseph E. Krakora, Public Defender, attorney for appellant (Anthony J. Vecchio, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Miguel DeLaCruz appeals from the denial of his petition for post-conviction relief (PCR), contending he established a prima facie case of ineffective assistance of counsel requiring an evidentiary hearing, and the trial court erred in denying his motion to withdraw his plea. Because Judge Mercado-Ramirez correctly determined the evidence insufficient to entitle defendant to any relief, we affirm.

Defendant was indicted with six others in a 236-count indictment arising out of the repeated sexual assault of a dancer at an after-hours party at the bar where she worked. Thirty-nine of those counts sounded against defendant and included charges of first-degree aggravated sexual assault and kidnapping, aggravated sexual contact and sexual assault. The victim contended that someone slipped something into her drink, causing her to largely lose consciousness. One of the co-defendants filmed almost the entire ordeal on a video camera.

The video is over an hour long of continuous play. In the first minutes, the victim goes from standing on her own to repeatedly falling off a chair. Defendant is clearly shown helping to undress the victim and prying her legs open while she ineffectually tries to resist and protest as others of the defendants held her down on the bar. Defendant appears to perform oral sex on the victim

2

and is clearly shown inserting the neck of a beer bottle into her vagina. He is also seen carrying the unconscious victim into another room off-camera. At another point in the video, he is standing partially disrobed as a person standing outside the frame hands him a condom.

The crimes occurred in early November 2012, and defendant was arrested within a few days. He was not indicted, however, until April 2013. A few days before his arraignment, the State offered, in writing, to permit defendant to plead to one count of first-degree sexual assault in exchange for a recommended twelve-year NERA[1] term, the same plea defendant finally accepted in June 2017. In the interim, defendant brought a successful bail motion, and unsuccessful motions to dismiss the indictment, suppress the video, and pierce the rape shield, and pursued an unsuccessful interlocutory appeal and twice sought a stay of the proceedings.

When defendant appeared for the final pre-trial conference, he told the court he needed additional time to review the pre-trial memo with his counsel. The court adjourned the conference to allow defendant to meet and confer with counsel. When defendant appeared two days later, he advised the court he was not prepared to accept the State's plea offer; that he wished to fire his privately

---

[1] The No Early Release Act, N.J.S.A. 2C:43-7.2.

retained counsel; and that "he was not emotionally ready to go to trial." After hearing argument on the informal motion to relieve counsel, the judge noted it was only after she had set a firm trial date that defendant expressed any displeasure with his counsel, the same lawyer who had represented him since shortly after his arrest almost five years before. Suspecting defendant's change of heart was influenced by his desire to delay the trial, the court advised defendant he was free to retain new counsel, but the trial date remained firm.

Two days later, after consulting with other criminal defense lawyers about his case and the plea offer, defendant again appeared before the court, advising he did want his lawyer to stay in the case, and that he was prepared to accept the State's plea offer. At defense counsel's request, the court adjourned the matter for ten days to allow defendant to review the plea forms with his counsel. When defendant appeared on the rescheduled date, he advised the court he wished to go to trial and intended to re-file his motion for a stay.

The judge heard and denied defendant's second motion to stay the proceedings a few days later. Three days after that, defendant entered his plea.

Judge Mercado-Ramirez spent over an hour taking defendant's guilty plea. Defendant's counsel interrupted her as she was explaining to defendant his maximum sentence exposure on first-degree sexual assault to ask if she would

A-0187-19

"run that by [defendant] one more time. . . . [b]ecause [counsel was] not sure that he — that he's distinguishing between the 12 with 8 and a potential 20 with 85 should he be convicted of the first degree." The judge stopped and explained to defendant that she was trying to ensure he understood his maximum exposure on that charge were he found guilty at trial. Defendant replied that he "was confused because [he] was really pleading — pleading guilty for 12 years," but confirmed he now "[did] understand" the distinction.

The judge also led defendant through a detailed factual basis for the plea. When the prosecutor asked defendant what he forced the victim to do and how, defendant responded that he forced oral sex on her when she was on the bar because he "believed she was not aware of what she was doing." Defendant, however, balked at averring he penetrated the victim with a beer bottle, saying his "intention was not to put in the bottle. I just rubbed it," but if the prosecutor intended to say that defendant "put it in, [he] accept[ed] it." As defendant continued to equivocate, the judge interrupted, "Did you put the bottle inside her vagina or not, Mr. DeLaCruz? You saw the video." Defendant replied he had seen the video. The judge asked again, "Did you put the bottle inside of her?" Defendant admitted he had and that her ankles had been crossed and he "opened her legs up even though her ankles were crossed and [she was] resisting."

5

A-0187-19

Prior to sentencing, defendant made a motion to withdraw his plea, claiming it was not voluntary or knowing. His counsel claimed the State was never willing to negotiate anything other than its original offer, presenting defendant with a choice of taking it or going to trial eleven days later. Counsel argued defendant had always maintained his innocence, he felt coerced and pressured to enter his plea, and when he consulted other counsel, all wanted to view the video, which was not possible as it was under protective order. Counsel argued the plea was not a truly negotiated one, and the State would suffer no prejudice from its withdrawal as it still had at least three of his co-defendants to try.

Judge Mercado-Ramirez denied the motion. Painstakingly analyzing each of the Slater[2] factors, the judge found defendant could not establish a single one. The judge emphasized the video evidence showing the victim only barely conscious, if at all, severely undercut defendant's claim that she consented, destroying what might ordinarily be considered a strong argument in his favor. The judge also noted during the plea colloquy that while defendant initially denied penetrating the victim with a bottle, he was not "battered into" admitting what he did. The judge emphasized she saw "his body language, . . . his face,

---

[2] State v. Slater, 198 N.J. 145, 157 (2009).

. . . his demeanor," and concluded he didn't want to admit what he'd done, "not because you can't see it on the video, [or] because he forgot it happened." Instead, the judge stated what she drew from the colloquy was that defendant didn't want "to admit it because it's a shameful thing to have to have to admit to."

The judge also corrected the misimpression that defendant was stampeded into a plea by a looming trial date. Besides noting defendant had been offered the same plea in 2013, the judge noted she had written to counsel on May 1, 2017, that the plea cutoff would be June 12, with trial starting a month later on July 10. The judge found there was nothing in the record to indicate defendant was anything other than intelligent and articulate, even though he did not speak English well, and nothing to indicate his plea was anything other than knowing and voluntary. The judge noted defendant's counsel communicated with him in fluent Spanish, and that an interpreter was always used when defendant appeared before the court. She also noted defendant was facing a life sentence if he were convicted of all charges and that defendant's "impetus for pleading guilty was it was a generous resolution" of the indictment, and defendant had determined, after a great deal of consultation with his counsel and others, that he did not wish to risk taking the case to trial. Rejecting defendant's arguments that the

A-0187-19

plea was not a negotiated one and the State not prejudiced by its withdrawal, the judge found the State was prejudiced by having to reopen the case, and that the State's and the victim's interest in finality outweighed defendant's interest in withdrawing his plea "without adequate reason."

At sentencing, defendant complained of being the only one of the defendants "who's going to be locked up[3] for something [he] really didn't do." Explaining all he did was "follow along with [what] the other[s] were doing," and that "[i]n the same way that [the victim] was out of it, so was [he]," defendant rhetorically asked "how could it be possible that the people who actually did this are free and I'm here?" He concluded his allocution by asserting "it's just — it's unfair what is being done to me." The judge rejected mitigating factors urged by defense counsel, among them that defendant did not contemplate his conduct would cause or threaten harm and that he acted under extreme provocation, and sentenced him in accordance with his negotiated agreement.

At the conclusion of the sentencing, defendant confirmed for the court his counsel had explained he had forty-five days in which to file an appeal, and that

---

[3]  At the time of sentencing, two of the defendants had accepted a voluntary removal from the country and the others were awaiting trial.

if he could not afford counsel, he could make application for a public defender. Counsel advised the court he would write to the criminal division manager on defendant's behalf, which he did, advising that defendant was unable to afford an attorney, "requires assignment of counsel" and asking the manager to "[m]ake all the necessary arrangements for Mr. DeLaCruz to apply for the public defender on this appeal." Counsel copied defendant on that letter, emphasizing the date on which his right to appeal expired.

Defendant did not file a direct appeal. A little over four months after sentencing, defendant filed a PCR petition alleging he received ineffective assistance of counsel in connection with his plea. Defendant claimed he was invited to a party in which "working girls would attend in their capacities as prostitutes/strippers after their shift at the strip club," that the victim knew she was being videotaped, and she was the one who initiated the sexual contact with him.

Defendant claimed that after he was released on bail,[4] his counsel told him in exchange for pleading guilty he would receive probation or receive "a downgraded charge as a misdemeanor." Later on, his counsel advised him the

---

[4] Defendant spent approximately 200 days in the county jail. He was released in June of 2013, two months after his arraignment.

A-0187-19

best he could anticipate was a twelve-year NERA term, and that he had tried to have his counsel removed prior to entry of his plea. Appointed counsel filed a brief, arguing plea counsel was ineffective for failing to file a speedy trial motion, giving defendant erroneous advice in connection with his plea and failing to file a direct appeal on his behalf. Counsel also argued plea counsel's cumulative errors "amounted to ineffective assistance of counsel" and that defendant should be permitted to withdraw his guilty plea.

In a cogent and comprehensive opinion delivered from the bench, Judge Mercado-Ramirez denied the petition, finding defendant could not establish either prong of the Strickland[5] standard. After detailing the lengthy procedural history of the case in the context of the Barker[6] factors, the judge found the lion's share of the delay in the case was caused by defendant's procedural maneuvering. Although finding defendant "had a right to file all those motions," appeal and seek several requests for adjournments, he "cannot now hold those delays against the State alleging a speedy trial violation." The judge further found defendant never asserted his right to a speedy trial, and a motion to that effect would have been unavailing. See State v. Fisher, 156 N.J. 494, 501 (1998)

---

[5] Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

[6] Barker v. Wingo, 407 U.S. 514, 530 (1972).

A-0187-19

(explaining a defendant arguing his counsel was ineffective for failure to file a motion must prove the motion is meritorious).

The judge found nothing in the record to support defendant's claim that he understood, based on his counsel's erroneous advice, that were he to accept the plea agreement, he would be pleading to a fourth-degree crime and sentenced to probation.  The judge noted defendant received the plea offer for a twelve-year NERA term in advance of his arraignment in 2013, which defendant acknowledged he received when he filed a certification in support of his first motion to withdraw his plea in 2018.  Harkening back to defendant's vacillation over accepting the plea, the judge noted defendant was clearly aware of the terms of the plea when he rejected it at the final pre-trial conference, and the plea colloquy makes clear he understood it when he admitted his guilt and asked the court to accept his guilty plea.

As for defendant's claim of ineffective assistance based on counsel's failure to file a direct appeal, the judge noted that such would ordinarily require an evidentiary hearing.[7]  The judge found no hearing was required here,

---

[7] Defendant did not raise counsel's failure to file a direct appeal in his petition, and we noted no supplemental certification or amended petition raising it.  See State v. Jones, 219 N.J. 298, 312 (2014) (explaining that Rule 3:22-10(c)

however, because defendant's private counsel was under no obligation to file an appeal on his behalf, see United States ex rel. O'Brien v. Maroney, 423 F.2d 865, 868 (3d Cir. 1970). The judge further found defendant knew his counsel was not representing him on appeal, and that defendant was copied on counsel's letter to the criminal division manager, advising defendant was indigent and required counsel be appointed for him, along with the last date for filing the appeal.

After concluding defendant could not establish a prima facie case of ineffective assistance under the Strickland standard, the judge considered, and rejected, defendant's request to withdraw his plea under Rule 3:21-1. The judge noted she had denied defendant's earlier motion to withdraw his plea made prior to sentencing, and that an even more stringent standard applied after sentencing as "the court weighs more heavily the State's interest in finality." State v. McQuaid, 147 N.J. 464, 487 (1997). Analyzing defendant's motion under Slater, the judge found defendant's arguments had not changed and that none of the four factors weighed in his favor.

Defendant appeals, raising the following issues:

---

requires "factual assertions in a petition for post-conviction relief be made by affidavit or certification in order to secure an evidentiary hearing").

POINT I

THE PCR COURT ERRED IN NOT GRANTING DEFENDANT AN EVIDENTIARY HEARING WHERE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF TRIAL COUNSEL'S ERRONEOUS ADVICE REGARDING THE DIRECT CONSEQUENCES OF DEFENDANT'S GUILTY PLEA.

POINT II

THE PCR COURT ERRED IN NOT GRANTING POST-CONVICTION RELIEF OR AN EVIDENTIARY HEARING WHERE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS ATTORNEY'S FAILURE TO MOVE FOR A DISMISSAL BASED ON LACK OF A SPEEDY TRIAL.

POINT III

THE PCR COURT ERRED IN NOT GRANTING POST-CONVICTION RELIEF OR AN EVIDENTIARY HEARING WHERE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF TRIAL COUNSEL'S FAILURE TO FILE A DIRECT APPEAL ON DEFENDANT'S BEHALF.

POINT IV

THE PCR COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

Having reviewed defendant's arguments in light of the applicable law, we deem them to be without sufficient merit to warrant discussion in a written opinion, see Rule 2:11-3(e)(2), and affirm the decision of the trial court

13

substantially for the reasons expressed in Judge Mercado-Ramirez's thorough and thoughtful opinion from the bench on July 23, 2019.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14