## SMITH v. BENNETT, WARDEN.

No. 174.   Argued March 28, 1961.—Decided April 17, 1961.*

*Luther L. Hill, Jr.,* acting under appointment by the Court, 363 U. S. 834, 838, argued the causes and filed a brief for petitioners in both cases.

*Evan Hultman,* Attorney General of Iowa, argued the causes and filed a brief for respondent in both cases.

MR. JUSTICE CLARK delivered the opinion of the Court.

The issue in these habeas corpus cases concerns the validity, under the Equal Protection Clause of the Fourteenth Amendment, of the requirement of Iowa law that necessitates the payment of statutory filing fees [1] by an indigent prisoner of the State before an application for a writ of habeas corpus or the allowance of an appeal in such proceedings will be docketed.   As we noted in *Burns* v. *Ohio,* 360 U. S. 252, 256 (1959), "[t]he State's

---

*Together with No. 177, *Marshall* v. *Bennett, Warden,* also on certiorari to the same Court.

[1] Iowa Code Ann. (Cum. Supp. 1960) § 606.15 provides in pertinent part that "[t]he clerk of the district court shall charge and collect . . . [f]or filing any petition . . . and docketing the same, four dollars."   Section 685.3 states in relevant part that "[t]he clerk [of the Supreme Court] shall collect . . . [u]pon filing each appeal, three dollars."

commendable frankness in [these] . . . case[s] has simplified the issues." In its brief, the State conceded that "indigent convicted criminals are unable to file a petition for habeas corpus in Iowa." We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.

In No. 174, *Neal Merle Smith* v. *John E. Bennett, Warden,* the petitioner was convicted and sentenced to serve 10 years in the state penitentiary for the offense of breaking and entering. In due course he was released on parole. After a short period, however, this was revoked for violation of its conditions. Petitioner was arrested and was thereafter returned to the penitentiary for completion of his sentence. He then forwarded to the Clerk of the District Court of Lee County, Iowa, a petition for a writ of habeas corpus with accompanying motion to proceed *in forma pauperis* and an affidavit of poverty. In the petition he raised constitutional questions as to the validity of the warrant of arrest under which he was taken into custody and returned to the penitentiary. The Clerk refused to docket the petition without payment of the $4 filing fee. Petitioner then filed a motion in the Iowa Supreme Court for leave to appeal *in forma pauperis,* together with a pauper's oath, which the court denied without opinion. On appeal to this Court, we dismissed the appeal but treated the papers as a petition for certiorari, which was granted, limited to the above question, 363 U. S. 834.

In No. 177, *Richard W. Marshall* v. *John E. Bennett, Warden,* the petitioner, who was represented by counsel, pleaded guilty to an information charging the offense of breaking and entering and was sentenced to 10 years' imprisonment at the Iowa State Penitentiary. A year later he forwarded to the Clerk of the District Court of

Lee County, Iowa, a petition for a writ of habeas corpus alleging that he was detained "contrary to the provisions of the 14th Amendment, § 1" because the information to which he pleaded guilty was "fatal on its face" in that "it does not charge Petitioner with 'intent' " and further because his "plea thereon was obtained by coercion and duress." Accompanying the petition was a motion for leave to proceed *in forma pauperis* and a pauper's affidavit. Thereafter, in an unreported written order, the court refused to docket the petition without the payment of the statutory filing fee but, nevertheless, examined the petition and found it "would have to be denied if properly presented to the Court." Petitioner forwarded appeal papers to the Supreme Court of Iowa but that application was also denied. Petitioner's motion for leave to proceed here *in forma pauperis* was granted, as was his petition for certiorari, which was limited to the question posed in the opening paragraph, *supra.* 363 U. S. 838.

In *Burns* v. *Ohio, supra,* we decided that a State could not "constitutionally require . . . an indigent defendant in a criminal case [to] pay a filing fee before permitting him to file a motion for leave to appeal in one of its courts." At p. 253. That decision was predicated upon our earlier holding in *Griffin* v. *Illinois,* 351 U. S. 12 (1956), that an indigent criminal defendant was entitled to a transcript of the record of his trial, or an adequate substitute therefor, where needed to effectively prosecute an appeal from his conviction. The gist of these cases is that because "[t]here is no rational basis for assuming that indigents' motions for leave to appeal will be less meritorious than those of other defendants," *Burns* v. *Ohio, supra,* at 257–258, "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has," *Griffin* v. *Illinois, supra,* at 19, and consequently that "[t]he imposition by the State of financial barriers restricting the availability of appellate

review for indigent criminal defendants has no place in our heritage of Equal Justice Under Law." *Burns* v. *Ohio, supra*, at 258. Iowa had long anticipated the rule announced in these cases, *i. e.,* indigent defendants may appeal from criminal convictions without prior payment of filing fees, Iowa Code § 789.20 (enacted in 1917), and transcripts are provided by the county to be used in such appeals, Iowa Code § 792.8 (enacted in 1878). As the State points out, those cases "were concerned with the rights of a convicted criminal seeking to make a direct attack upon his conviction by appeal . . . ." Habeas corpus, on the other hand, is not an attack on the conviction but on the validity of the detention and is, therefore, a collateral proceeding. The State, however, admits that the Great Writ "is an available post-conviction civil remedy in . . . Iowa" and concedes that a prisoner's inability to pay the $4 fee would render it unavailable to him. The question is therefore clearly posed: Since Iowa does make the writ available to prisoners who have the $4 fee, may it constitutionally preclude its use by those who do not?

The State insists that it may do so for three reasons. First, habeas corpus is a civil action brought by a prisoner to obtain his personal liberty, a civil right, and if it must be made available to indigents free of fees in protection of that right then it must be made available in like manner to all indigents in the protection of every civil right. Second, habeas corpus is a statutory right, Iowa Code § 663.5, and the legislature may constitutionally extend or limit its application. Finally, a habeas corpus action may be brought in the United States District Court because Iowa's fee requirement fulfills the demand of 28 U. S. C. § 2254, that "the existence of circumstances rendering such [state corrective] process ineffective to protect the rights of the prisoner" be present.

While habeas corpus may, of course, be found to be a civil action for procedural purposes, *Ex parte Tom Tong,* 108 U. S. 556 (1883), it does not follow that its availability in testing the State's right to detain an indigent prisoner may be subject to the payment of a filing fee. The State admits that each petitioner here is an indigent and that its requirement as to the $4 fee payment has effectively denied them the use of the writ. While $4 is, as the State says, an "extremely nominal" sum, if one does not have it and is unable to get it the fee might as well be $400—which the State emphasizes it is not. In Iowa, the writ is a post-conviction remedy available to all prisoners who have $4. We shall not quibble as to whether in this context it be called a civil or criminal action for, as Selden has said, it is "the highest remedy in law, for any man that is imprisoned." 3 Howell's State Trials 95 (1628). The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels. Ever since the Magna Charta, man's greatest right—personal liberty—has been guaranteed, and the procedures of the Habeas Corpus Act of 1679 [2] gave to every Englishman a prompt and effective remedy for testing the legality of his imprisonment. Considered by the Founders as the highest safeguard of liberty, it was written into the Constitution of the United States that its "privilege . . . shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." Art. I, § 9. Its principle is imbedded in the fundamental law of 47 of our States. It has long been available in the federal courts to indigent prisoners of both the State and Federal Governments to test the validity of their detention. Over the centuries it has been the common law world's "freedom writ" by whose orderly

---

[2] 31 Car. II, c. 2.

processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free. We repeat what has been so truly said of the federal writ: "there is no higher duty than to maintain it unimpaired," *Bowen* v. *Johnston,* 306 U. S. 19, 26 (1939), and unsuspended, save only in the cases specified in our Constitution. When an equivalent right is granted by a State, financial hurdles must not be permitted to condition its exercise.

To require the State to docket applications for the post-conviction remedy of habeas corpus by indigent prisoners without the fee payment does not necessarily mean that all habeas corpus or other actions involving civil rights must be on the same footing. Only those involving indigent convicted prisoners are involved here and we pass only upon them.

The Attorney General of Iowa also argues that indigent prisoners in the State's custody may seek "vindication of federal rights alleged to have been denied by the state" in the federal courts. But even though this be true—an additional point not involved or passed upon here—it would ill-behoove this great State, whose devotion to the equality of rights is indelibly stamped upon its history, to say to its indigent prisoners seeking to redress what they believe to be the State's wrongs: "Go to the federal court." Moreover, the state remedy may offer review of questions not involving federal rights and therefore not raisable in federal habeas corpus.

Because Iowa has established such a procedure, we need consider neither the issue raised by petitioners that the State is constitutionally required to offer some type of post-conviction remedy for the vindication of federal rights, nor the State's converse claim that the remedy is a matter of legislative grace. However, the operation of the statutes under attack has, perhaps inadvertently,

made it available only to those persons who can pay the necessary filing fees. This is what it cannot do.

Throughout the centuries the Great Writ has been the shield of personal freedom insuring liberty to persons illegally detained. Respecting the State's grant of a right to test their detention, the Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale, and its hand extends as far to each. In failing to extend the privilege of the Great Writ to its indigent prisoners, Iowa denies them equal protection of the laws. The judgments of the Supreme Court of Iowa are vacated and each cause is remanded to that court for further action consistent with this opinion.

*Vacated and remanded.*