COMMONWEALTH *vs.* ROBERT G. ELLIOTT.

Middlesex.  February 7, 1967. — March 13, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* New trial, Assistance of counsel, Continuance.  *Constitutional Law,* Equal protection of laws, Assistance of counsel.

Where, following conviction of a defendant on charges of robbing a woman and raping her, the defendant filed motions for a new trial grounded on newly discovered evidence consisting of an alleged confession, later repudiated, by the defendant's brother that he, the brother, had committed the crimes, it could not be said on the record that there was deprivation of the defendant's constitutional right to equal protection of the laws, or other error, in denial of motions by new counsel for the defendant for a continuance of the hearing on the motions for a new trial pending his obtaining a free transcript of the trial testimony, or that the judge denied the defendant an opportunity to show a withdrawal by the victim of her identification of the defendant as her assailant, or that the judge in any way deprived the defendant of his constitutional right to effective representation by counsel in connection with the motions for a new trial, or that the judge erred in denying the motions for a new trial after specifically finding the "alleged confession" "not trustworthy . . . [or] credible."

INDICTMENTS found and returned in the Superior Court on September 10, 1964.

The defendant appealed from orders by *Moynihan, J.,* denying motions for a new trial.

*Charles M. Burnim* for the defendant.

*Ruth I. Abrams,* Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J.  Robert G. Elliott, on October 28, 1964, was convicted of rape and robbery committed on July 20, 1964.  He is now serving the sentences imposed.  On July 12, 1965, Robert's brother Chester, with circumstantial detail, told an associate attorney in the office of an attorney who thereafter entered his appearance for Robert that he, and not Robert, had committed the rape, and that his troubled conscience had awakened him to action because

Commonwealth v. Elliott.

of the recent death of one of Robert's children in a fire. He had been to see a priest.   Motions for a new trial on the ground of newly discovered evidence were filed on August 4, 1965, by Robert's present attorney.   On July 23, 1965, Chester made confirmatory statements to that attorney in the latter's office and the attorney by telephone informed an assistant district attorney of Chester's statements.   Chester, on August 10, 1965, spoke with two police officers and repudiated his purported confession.

The associate attorney, searching for Chester on a day in August, was informed that the police were talking to Chester; he assumed the talk was occurring that day. About two days later Chester telephoned the associate attorney that he had signed a repudiation "because the police beat me up," but that he had committed the crime.   Chester declined to have the alleged beating verified by medical inspection and photographs.   The attorney then doubted, and later rejected, the claim of physical coercion.   On September 22, 1965, the judge ordered that affidavits in support of the August 4 motions be filed by October 1, 1965.   On September 30, Chester declined the request of the associate attorney to swear to a statement summarizing his confession of July 12, and on October 1 there were filed affidavits of the associate attorney summarizing Chester's disclosures of July 12 and attaching Chester's confirmatory signed statement of that date, witnessed by the four persons who had accompanied him to the attorney's office.

The motions for a new trial and associated motions were heard on October 14, 1965.   Robert, on February 10, 1965, had filed a motion for a free transcript of the trial.[1]   This was not presented to the judge who presided at the trial, but a letter from the clerk's office on April 12, 1965, indicated that it was under consideration.   On October 14, 1965, Robert's present attorney adopted the motion and pressed for its allowance.   He also moved then, as well as on Octo-

---

[1] The attorney who had tried the case had not withdrawn his appearance of record.  He had, however, told Robert's present attorney that he had ceased to act for Robert but would be glad to coöperate in any way.

ber 15, after the evidence had been taken, for a continuance until the transcript was received, asserting that he was at a disadvantage in not having represented the defendant at the trial. The judge allowed the motion for a free transcript, but denied the motions for a continuance, and the defendant duly excepted. The defendant's indigence was shown.

The defendant contends that in the denial of a continuance "a financial consideration [was interposed] between an indigent prisoner . . . and his exercise of a . . . right to sue for his liberty" (*Smith* v. *Bennett, Warden,* 365 U. S. 708, 709), and hence that he was deprived of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States. He contends also that he was denied effective representation by counsel in violation of the Sixth Amendment.

The judge, after hearing testimony from Chester (who persisted in the repudiation), Robert, Robert's wife, and the associate attorney, and hearing a tape recording of Chester's statement of July 12, denied the motions for a new trial, saying, "I do not believe the confession of Chester Elliott. I find as a fact that . . . [it] is not trustworthy . . . [or] credible. I do not find the facts to be as set forth in the alleged confession of Chester Elliott." The defendant appealed. G. L. c. 278, §§ 33A–33G.

We have the trial transcript as well as the transcript of the hearing on the motions. The significant issue at the trial was the identity of the assailant. Robert did not testify. The judge could have found that the victim, in the course of the police investigation, after examining a great many photographs, saw in person Chester, Robert, and a third man. She said that neither Chester nor the third man was the assailant. She was emphatic in her identification of Robert, having not only seen him but heard him speak. She was in court at the hearing on the motions, having been summoned by the defendant. It is a fair inference that she again saw both Robert and Chester and heard the tape recording of Chester's July 12 statement.

Commonwealth v. Elliott.

We assume that, in the circumstances, the judge would have permitted the defendant to inquire of her whether, in the light thereof, she wished to withdraw her identification. The transcript was not needed for that inquiry. The defendant did not call her to the stand, or indicate a desire for such a limited pertinent questioning.

At the close of the testimony, the following colloquy occurred: THE JUDGE: "What other evidence do you intend to offer?" THE ATTORNEY FOR THE DEFENDANT: "No other evidence . . . except that I'm disabled . . . to ask . . . the victim in this case about the possibility of mistake in identification. . . ." THE JUDGE: "I have no intention to allow you to call that girl and cross-examine her with respect to testimony that she gave at the trial. It's not within the scope of your motion for a new trial." THE ATTORNEY: "It would be within the scope of the claim that Chester Elliott was the assailant. Again, I can't properly examine her or determine the extent to which that may be provable from her testimony as a hostile witness without a transcript." THE JUDGE: "It's your request that she be put on the stand so that you may cross-examine her as to whether Chester Elliott or Robert Elliott was her assailant. . . . [Y]ou are going beyond the scope of your motion. Have you talked to the girl?" THE ATTORNEY: "I have [purposely] not talked to her." THE JUDGE: "I'm simply ruling that you are going to be confined . . . to the scope of your motion . . . . You have filed an affidavit. This matter could have been heard solely on the affidavit, as you are well aware. But there are limits beyond which I will not go in permitting testimony to be introduced. Newly discovered evidence I will give you ample leeway to introduce. You are not going to retry this case." These rulings were right. They do not suggest that the defendant would have been denied an opportunity to show recantation of testimony by the victim.

The judge declined to order the district attorney to accede to the defendant's request, first made on October 14, to be given his copy of the trial transcript.

There was no error in declining to continue the hearing. There was no constitutional right to present direct testimony or to review with witnesses the trial evidence. The judge did not unreasonably restrict the trial of the primary issue whether a statement repudiated by its maker was credible. Further the attorney, newly in the case on August 4, knew by mid-August, perhaps as early as August 12, that the police had a repudiation of the confession, and that Chester's July 12 statement would be of dubious worth as newly discovered evidence. If the intention was to seek to make use of trial testimony to buttress that statement, prompt action to obtain it was indicated. The argument under the Fourteenth Amendment is predicated on the assumption that a defendant of means would have ordered the transcript on February 10, 1965, and received it before October 14, 1965. There is no basis, however, for assuming that the pending motion for a free transcript, if brought forward for action in August, would not have been as promptly acted on as it was in October, or that the defendant would not have had the transcript by October 14, or by such date as the court, in the light of the defendant's prompt action, would have set for the hearing.

We see nothing in the contention that the court's action deprived the defendant of effective representation by counsel. He had no right to demand that his motion be heard on direct testimony of witnesses. It does not appear that his counsel, prior to October 14, indicated that he wished to offer such testimony.

Although a perusal of the transcript of the new trial proceedings is sufficient to show no abuse of discretion and no error, we have read the entire 1964 trial transcript. Viewing the October 14 hearing in the light of that transcript, we see nothing to point to the propriety of a new trial.

*Orders denying motions for new trial affirmed.*