The petitioner, John David Coleman, an inmate at William E. Donaldson Correctional Facility in Bessemer, filed this petition for a writ of mandamus after the Honorable Alfred Bahakel, circuit judge for the Tenth Judicial Circuit, denied his request to proceed in forma pauperis for purposes of filing a petition for postconviction relief pursuant to Rule 32, Ala.R.Crim.P. In June 1998, Coleman filed a Rule 32 petition attacking his 1989 convictions. The petition was accompanied by an in forma pauperis declaration.[1] (See Rule 32.6(c), Ala.R.Crim.P., and the accompanying form.) Judge Bahakel denied Coleman's request to proceed in forma pauperis and noted in his order denying the request that Coleman had filed four previous postconviction petitions. Coleman then filed this petition for a writ of mandamus directing Judge Bahakel to grant his request to proceed in forma pauperis.
As with any other petition for extraordinary relief, this Court must first determine if the matter is reviewable by extraordinary petition. Recently, Judge Cobb, writing for this Court inGoldsmith v. State, 709 So.2d 1352, 1353 (Ala.Cr.App. 1997), stated, "[M]andamus, and not appeal, is the proper method by which to compel the circuit court to proceed on an in forma pauperis petition."
The State, in its answer to the petition, initially argues that Coleman has failed to prove that he is indigent. Citing Staffordv. State, 647 So.2d 102 (Ala.Cr.App. 1994), the State argues that Coleman failed to attach to his in forma pauperis declaration a copy of the record of his prison financial account. It also contends that there is no evidence that Coleman is indigent.
Included with Coleman's petition is an in forma pauperis declaration Coleman executed on August 11, 1998. This declaration contains a certificate signed by the authorized officer of the institution at which Coleman is incarcerated and reflects that on August 11, 1998, Coleman had $.29 in his prison inmate account. Rule 32.6(a), provides in part:
 "If the petitioner desires to prosecute the petition in forma pauperis, he shall file the In Forma Pauperis Declaration at the end of the form [accompanying the rule]. In *Page 705 
all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined as to the amount of money or securities on deposit to the petitioner's credit in any account in the institution."
Coleman's in forma pauperis declaration and the accompanying certificate indicate that he is indigent. Cummings v. State,687 So.2d 1290 (Ala.Cr.App. 1996) and Powell v. State, 674 So.2d 1259
(Ala.Cr.App. 1995). The declaration and the certificate were sufficient to satisfy the requirements of Rule 32.6(a) pertaining to in forma pauperis status. It was not necessary for Coleman to forward a copy of his prison inmate account summary. See Rule 32.6(a), Ala.R.Crim.P.
Alternatively, the State argues that Judge Bahakel did not abuse his discretion in denying Coleman in forma pauperis status because this is Coleman's fifth petition and "there should be some recourse for the state" when dealing with litigants who file repetitious petitions.
This Court is well acquainted with the increasing number of postconviction petitions filed daily by inmates in Alabama prisons. In this Court's 1997-98 Term, 578 appeals, approximately 26.6% of the appeals filed with this Court for that term, were from the denial of postconviction petitions.[2] "We sympathize with the frustration experienced by the [district] court here as well as by other [district] courts deluged with [the petitioner's] parade of pleadings, petitions, and other papers."In re Green, 669 F.2d 779, 786 (D.C. Cir. 1981). "The goal of fairly dispensing justice is compromised when courts are forced to devote their limited resources to the processing of repetitious and frivolous requests." Cotner v. Creek CountyDistrict Court, 911 P.2d 1215, 1221 (Okla.Crim.App. 1996). The barrage of postconviction petitions has caused numerous delays in the judicial process and problems in enforcing judgments.[3]
"Finality of judgment once thought to be the sine qua non of a stable judicial system is now in the field of criminal law no more than a phantom, excitedly pursued but rarely caught." Honorev. Washington State Board of Prison Terms and Paroles, 77 Wn.2d 660,691, 466 P.2d 485, 504 (1970) (Hale, Justice, concurring only in the result).
The United States Supreme Court, in Bounds v. Smith,430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), stated:
 "It is now established beyond doubt that prisoners have a constitutional right to access to the courts. This Court recognized that right more than 35 years ago when it struck down a regulation prohibiting state prisoners from filing petitions for habeas corpus unless they were found `"properly drawn"' by the `"legal investigator"' for the parole board. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034
(1941). We held this violated the principle that `the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus.' Id., at 549, 61 S.Ct. at 641. See also Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942).
 "More recent decisions have struck down restrictions and required remedial measures to insure that inmate access to the courts is adequate, effective, and meaningful. Thus, in order to prevent `effectively foreclosed access,' indigent prisoners must be allowed to file appeals and habeas corpus petitions without payment of docket fees. Burns v. Ohio, 360 U.S. 252, 257, 79 S.Ct. 1164, 1168, 3 L.Ed.2d 1209 (1959); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961)."
430 U.S. at 821-22, 97 S.Ct. 1491. The Bounds court specifically held that the right of access to the courts required prison *Page 706 
authorities to provide inmates with adequate law libraries or adequate assistance from persons trained in the law.
The United States Supreme Court in Smith v. Bennett,365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), held that the right to access to the courts extends to the right to file collateral attacks on criminal convictions. The Smith v. Bennett Court struck down an Iowa law that required a person filing a habeas corpus petition to pay a $4 filing fee.[4]
Recently, the United States Supreme Court in Lewis v. Casey,518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), limited its holding in Bounds, requiring a showing of "actual injury" before any relief could be granted on a collateral petition.[5] The Supreme Court further stated:
 "Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."
518 U.S. at 355, 116 S.Ct. 2174.
We recognize, as have many courts before us, that an indigent is entitled to access to the courts; however, a lower court is not powerless to protect itself from "the threat of onerous, multiplicitious, and baseless litigation." Abdullah v. Gatto,773 F.2d 487, 488 (2d Cir. 1985). See White v. State, 695 So.2d 241
(Ala.Cr.App. 1996); Coleman v. State, 539 So.2d 454 (Ala.Cr.App 1988); and Peoples v. State, 531 So.2d 323 (Ala.Cr.App. 1988). InPeoples, this Court, quoting the United States Court of Appeals for the Eleventh Circuit in Procup v. Strickland, 792 F.2d 1069,1072-73 (11th Cir. 1986), first enumerated the sanctions a court may impose when confronted with a petitioner bringing repetitious petitions.
 "`[A] court is [not] powerless to protect itself and its process from abuse by unscrupulous prison inmates.' Matter of Green, 586 F.2d 1247, 1251 (8th Cir. 1978), cert. denied, 440 U.S. 922, 99 S.Ct. 1249, 59 L.Ed.2d 475 (1979). Courts have an `inherent power . . . to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.' Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir. 1986). While those conditions may be `onerous,' they `cannot be so burdensome, however, as to deny a litigant meaningful access to the courts.' Cotner, 795 F.2d at 902.
 "`In devising methods to attain the objective of curtailing the activity of such a prisoner, however, courts must carefully observe the fine line between legitimate restraints and an impermissible restriction on a prisoner's constitutional right of access to the courts. Various courts have employed and approved a variety of injunctive devices.
 "`As to prisoners who bring frequent or repetitious claims, courts have:
 "`— enjoined prisoner litigants from relitigating specific claims or claims arising from the same set of factual circumstances;
 "`— required litigants to accompany all future pleadings with affidavits *Page 707 
certifying that the claims being raised are novel, subject to contempt for false swearing;
 "`— directed the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action, and to send an extra copy of each pleading filed to the law clerk of the chief judge of the district;
 "`— directed the litigant to seek leave of court before filing pleadings in any new or pending lawsuit;
 "`— permitted abusive prisoner litigants to file in forma pauperis only claims alleging actual or threatened physical harm; and requiring payment of a filing fee to bring other claims;
 "`— limited the number of filings by a particular inmate, and
 "`— entered injunctions prohibiting the abusive prisoner from acting as a writ writer or jailhouse lawyer for other inmates.
 "`We do not here intend to indicate how this Court would treat any of the above injunctions in a particular case, but cite them as examples of how other courts have handled the problem. Other restrictions which might; be considered by a court attempting to deal with the problems created by a litigant such as [the defendant] include:
 "`— limitation of the number of pages to a complaint and other pleadings;
 "`— requiring a plaintiff to file an affidavit setting forth what attempts he has made to obtain an attorney to represent him;
 "`— limitation of further pleadings without order of court, after the complaint has been filed.
 "`This list is intended to be neither exhaustive nor limiting. As new ideas develop and old devices prove ineffective, the judiciary must respond with imaginative nee techniques designed to protect the court access of all litigants.' Procup v. Strickland, 792 F.2d 1069, 1072-73 (11th Cir. 1986)."
531 So.2d at 326-27. We further note that § 12-19-70(b)[6]
allows a court to waive the initial filing fee and tax the fee as costs at the end of the proceeding.
Having determined that Coleman may not be denied access to the courts but also being aware that a trial court may implement sanctions to protect itself from prolific litigants, we must now evaluate Judge Bahakel's order denying Coleman in forma pauperis status. This order states, "Defendant repeatedly filing Rule 32 petitions which are precluded. This Court declines to declare defendant indigent for his fifth filing. There should be some recourse for the State and cost to the defendant as his petition lacks merit."
In Abdullah v. Gatto, 773 F.2d 487, 487-88 (2d Cir. 1985), the United States Court of Appeals for the Second Circuit construed a district court's order mandating injunctive relief and "directing the clerk to `refuse any additional filings or complaints by Abdullah arising out of the same general subject matter . . . [of] his arrest, trial, conviction and imprisonment without Abdullah first paying the appropriate court costs and filing fees.'" The Court of Appeals, finding that the trial court was within its discretion in limiting the petitioner's in forma pauperis filings, stated:
 "[T]he order is overbroad in effectively blocking any action whatsoever relating to his arrest, conviction and imprisonment in that it precludes Abdullah from filing even a meritorious claim. Whatever overbreadth exists, however, can be easily cured by modifying the injunction to require Abdullah to seek leave of the district court before filing such actions."
In White v. State, 695 So.2d 241, 242 (Ala.Cr.App. 1996), this Court remanded the case to the circuit court because the trial court's order prohibited "the appellant from filing further postconviction petitions." As we stated in Coleman v. State,539 So.2d 454, 457 (Ala.Cr.App. 1988), "Although trial courts, in regulating the activities of abusive litigants, may impose restrictions under appropriate circumstances, these restrictions *Page 708 
cannot deny the litigant meaningful access to the courts."
Judge Bahakel's order notes that the previous postconviction petitions were precluded. Although Judge Bahakel did not specifically comment on the merits of Coleman's fifth postconviction petition, the implication in the order is that Judge Bahakel found the fifth petition likewise precluded. Judge Bahakel had no jurisdiction to consider the merits of the postconviction petition when he was considering the in forma pauperis declaration. As we recently stated in Goldsmith,709 So.2d 1352 (Ala.Cr.App. 1997) "[i]n the absence of a docket fee in the amount prescribed in § 12-19-71(3), Ala. Code 1975, or an approved in forma pauperis declaration, the petition for [postconviction] relief was never properly before the trial court. The order dismissing the petition was a nullity."
We empathize with the position in which Judge Bahakel finds himself. However, we must remand this cause so that he can evaluate the in forma pauperis declaration. As we stated above, the trial court is not without power to impose restrictions similar to those suggested in Procup. Judge Bahakel should be cognizant that any restrictions he places on further filings by Coleman should not be so overbroad as to deny Coleman "meaningful access to the courts." White, supra; Coleman, supra.
PETITION GRANTED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.
[1] An in forma pauperis declaration is a request by an indigent to waive the payment of filing fees. An "indigent" is defined in Rule 6.3(a), Ala.R.Crim.P., as "a person who is financially unable to pay for his or her defense."
[2] "The `virtual flood of post-conviction claims made by prisoners in both state and federal proceedings' has been recognized by the courts of this state on a number of occasions."Peoples v. State, 531 So.2d 323, 327 (Ala.Cr.App. 1988), quotingEx parte Boatwright, 471 So.2d 1257, 1259 (Ala. 1985) (Justice Maddox, concurring specially).
[3] This is especially true when the State seeks to enforce an order of execution on a person sentenced to die in Alabama's electric chair. In Alabama, collateral review of death penalty convictions results in years of delay before a death sentence may be satisfied.
[4] Alabama's postconviction remedy, Rule 32, Ala.R.Crim.P., "provides a review procedure comparable in scope to federal habeas corpus." Luttrell v. State, 644 S.W.2d 408, 409
(Tenn.Cr.App. 1982) (Tennessee's postconviction procedure is similar to Alabama's Rule 32 procedure.). See Blount v. State,572 So.2d 498, 501 (Ala.Cr.App. 1990) (discussing Temp. Ala.R.Crim.P. 20, now Rule 32, Ala.R.Crim.P.).
[5] Before Lewis, the United States Supreme Court had ruled that a court could deny an indigent in forma pauperis status when filing a petition for an extraordinary writ, i.e. mandamus. In ReSindram, 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599 (1991). The Court stated its reasoning for applying this standard to "extraordinary" writs:
 "The risks of abuse are particularly acute with respect to applications for extraordinary relief, since such petitions are not subject to any time limitations, and theoretically, could be filed at any time without limitation. In order to prevent frivolous petitions for extraordinary relief from unsettling the fair administration of justice, the Court has a duty to deny in forma pauperis status to those individuals who have abused the system."
498 U.S. at 180, 111 S.Ct. 596.
[6] This section provides: "The docket fee may be waived initially and taxed as costs at the conclusion of the case if the court finds that payment of the fee will constitute a substantial hardship."
[EDITORS' NOTE: PAGES 709-724 CONTAINS DECISIONS WITHOUT OPINIONS.] *Page 845