REL:08/29/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

## 1121399

_____

Ex parte William Keith Robey

PETITION FOR WRIT OF MANDAMUS

(In re: State of Alabama

v.

William Keith Robey)

(Jefferson Circuit Court, CC-95-4454 and CC-95-4455)

PER CURIAM.

PETITION DENIED. NO OPINION.

1121399

Stuart, Bolin, Parker, Shaw, Wise, and Bryan, JJ., concur.

Moore, C.J., and Murdock, J., dissent.

Main, J., recuses himself.

1121399

MOORE, Chief Justice (dissenting).

William Keith Robey petitioned this Court for a writ of mandamus to order Judge Alfred Bahakel, Jefferson Circuit Court, to grant Robey's application for in forma pauperis ("IFP") status[1] and to waive prepayment of the filing fee for a Rule 32, Ala. R. Crim. P., petition seeking postconviction relief. This Court today denies Robey's petition. For the reasons stated below, I dissent.

## I. Facts and Procedural History

On June 13, 2013, Robey filed his fourth Rule 32 petition accompanied by an application for IFP status. Attached to the application was a report of the activity in Robey's inmate account for the preceding 12 months that showed total deposits of $415 or an average of $34.58 per month. On June 19, 2013, Judge Bahakel summarily denied Robey's application for IFP status. Robey then filed a petition for a writ of mandamus with the Court of Criminal Appeals to compel the circuit court to grant him IFP status. In its order of August 23, 2013,

---

[1]"In forma pauperis" means "[i]n the manner of an indigent who is permitted to disregard filing fees and court costs." Black's Law Dictionary 899 (10th ed. 2014).

3

1121399

denying Robey's petition, the Court of Criminal Appeals stated:

> "Currently, the fee for filing a postconviction petition in the Jefferson Circuit Court is $206. Robey's inmate account summary shows that in the 12 months preceding the filing of the Rule 32 petition he had deposits to his inmate account in the amount of $415. [Robey] could have saved the money to pay the filing fee and is not indigent. See Ex parte Wyre, 74 So. 3d 479, 482 (Ala. Crim. App. 2011)."

Robey then petitioned this Court for a writ of mandamus, arguing that Ex parte Wyre, 74 So. 3d 479 (Ala. Crim. App. 2011), upon which the Court of Criminal Appeals relied in denying his mandamus petition, conflicted with previous cases that determined an inmate's indigency as of the date of the filing of a Rule 32 petition and did not use a retrospective "could-have-saved" rule. See Ex parte Beavers, 779 So. 2d 1223, 1224-25 (Ala. 2000); Ex parte Dozier, 827 So. 2d 774, 776 (Ala. 2002). He also argued that the rule in Wyre denied indigent prisoners access to the courts and was thus unconstitutional. On November 27, 2013, we ordered the circuit judge and the State of Alabama to answer Robey's petition.

Because Judge Bahakel had retired early in 2013, Judge Bill Cole, who assumed Judge Bahakel's docket, responded to our order, stating, in part:

4

"The undersigned is aware that individuals frequently abuse the privilege of being able to file a Rule 32 Petition. If inmates are allowed to spend any money they receive knowing that they can then file a Rule 32 without cost, they would probably be more willing to file a frivolous Rule 32. These petitions can require the State of Alabama and the judges presiding over the case to spend several hours ruling on an issue that has already been raised or that the petitioner may know is without merit. To abandon any consideration of the amount of money that has been in an inmate's prison account during the last year could cause abuse of the important relief individuals are allowed though Rule 32 of the Alabama Rules of Criminal Procedure."

## II. Standard of Review

"A writ of mandamus is an extraordinary remedy that requires the showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte McNaughton, 728 So. 2d 592, 594 (Ala. 1998). A trial court's refusal to grant IFP status to an indigent prisoner seeking postconviction relief makes it impossible for the prisoner to file a Rule 32 petition. "[I]n the absence of a docket fee ... or an approved in forma pauperis declaration, the petition for [postconviction] review was never properly before the trial

5

1121399

court." <u>Goldsmith v. State</u>, 709 So. 2d 1352, 1352-53 (Ala. Crim. App. 1997). Because "refusal of the circuit court to accept a petition is not a final judgment," <u>id.</u> at 1353, the remedy of appeal is unavailable.

Thus, Robey satisfies the third part of the mandamus test: the lack of another adequate remedy. For this reason, "mandamus, and not appeal, is the proper method by which to compel the circuit court to proceed on an in forma pauperis petition." <u>Goldsmith</u>, 709 So. 2d at 1353. Robey properly invoked the jurisdiction of this Court by timely filing a petition for a writ of mandamus directed to the circuit court within 14 days of the decision of the Court of Criminal Appeals. Rule 21(e), Ala. R. App. P. The only issue remaining is whether Robey had a clear legal right to IFP status that the circuit court had an imperative duty to recognize.

### III. Analysis

In <u>Wyre</u>, the Court of Criminal Appeals held that an inmate who had "more than twice the amount" necessary to pay a filing fee deposited in his inmate account in the previous 12 months was not indigent and that "an inmate who has appreciably more than the amount necessary to pay a filing fee

6

deposited in his inmate account in the 12 months preceding the filing of an IFP request is not indigent as that term is defined in Rule 6.3(a), Ala. R. Crim. P." 74 So. 3d at 482. The Court of Criminal Appeals in dicta has encouraged trial courts to use the Wyre rule to deny IFP status to Rule 32 petitioners. See State v. Thomas, [CR-10-1401, May 25, 2012] ___ So. 3d ___ n.3 (Ala. Crim. App. 2012); Yocum v. State, 107 So. 3d 219 n.1 (Ala. Crim. App. 2011).

The quantity and often questionable quality of Rule 32 petitions is a valid concern for the judiciary. The Wyre rule, however, is inconsistent with precedent of this Court governing the methodology for determining prisoner indigency. Additionally, alternative remedies are available to effectively deter frivolous Rule 32 filings without closing the courthouse door on prisoners who lack the current means to pay a filing fee.

A. The Volume of Postconviction Litigation

Judge Cole's concern about reducing the number of meritless Rule 32 petitions is valid. "We do not favor continuous, repetitious or frivolous petitions on matters which have been finally adjudicated." Allison v. State, 277

7

1121399

Ala. 423, 424, 171 So. 2d 239, 239 (1965). See also Ex parte Coleman, 728 So. 2d 703, 705 (Ala. 1998) ("The barrage of postconviction petitions has caused numerous delays in the judicial process and problems in enforcing judgments.").

The challenge of managing a flood of often questionable prisoner litigation is not new. In 1961, the Alabama Court of Appeals stated:

> "We are now receiving a large number of various sorts of documents from prisoners confined in the penitentiaries of this State, seeking extraordinary writs. Apparently encouraged by recent decisions of the Federal courts, they do not hesitate to make the most extravagant claims of deprivation of constitutional rights in their trials in the courts of this State. It is often difficult for the court below and for this court to determine just what relief these documents are seeking, other than the authors want out of the penitentiary."

Warden v. State, 41 Ala. App. 449, 450, 134 So. 2d 783, 784 (1961). This Court, noting that "[f]inality of a criminal judgment and sentence today is as outmoded as the Model-T," expressed concern at the heavy toll this "mockery of our judicial system" exacted. Cooper v. Wiman, 273 Ala. 699, 700, 145 So. 2d 216, 217 (1962).

> "The petitioners take great comfort in the fact that no matter how frivolous their allegations or how utterly deficient their pleadings may be, the state must respond to these ofttimes unintelligible

8

pleadings, letters or memorandums, and/or proceed to costly and time-consuming hearings. The petitioners have nothing to lose, for they know that the very least they can obtain is a day away from their prison surroundings."

273 Ala. at 701, 145 So. 2d at 217.[2]

B. Determining Prisoner Indigency

Effective January 1, 1991, this Court adopted the Alabama Rules of Criminal Procedure, which defined an indigent as "a person who is financially unable to pay for his or her defense." Rule 6.3(a), Ala. R. Crim. P. An inmate claiming indigency could seek a waiver of the filing fee for a postconviction petition by attaching to the petition an "In Forma Pauperis Declaration." At the time of the adoption of the Alabama Rules of Criminal Procedure, Rule 32.6(a) read as follows, in pertinent part:

"In all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined as to the amount of money or securities on deposit to the petitioner's credit in any account in the institution, which certificate may be considered by the court in acting upon his application for leave to proceed in forma pauperis."

---

[2]Currently, Rule 32 petitions constitute 24% of the cases filed in the Alabama Court of Criminal Appeals -- about 500 filings per year. Alabama Unified Judicial System Fiscal Year 2012 Annual Report and Statistics, at 9.

1121399

The appendix to Rule 32 elaborated at paragraph (7):

"If you do not have the necessary fee, you may request permission to proceed in forma pauperis, in which event you must complete the declaration at the end of this form, setting forth information establishing your inability to pay the fees and costs or give security therefor. Your declaration must include financial information relating to the twelve (12) months preceding the filing of this petition."

The IFP declaration requires the inmate to disclose the "total value" of the inmate's prison account and the amount of money received from every source "during the past twelve months." At the end of the IFP declaration is a certificate for a prison official to complete as to the amount in the prisoner's account at the "institution where he is confined." Appendix to Rule 32. If the trial court grants the petitioner IFP status, the clerk of court "shall file the petition" without prepayment of the filing fee. Rule 32.6(a).

During the first decade that the IFP procedure of Rule 32.6(a) was in effect, prisoners complained that the trial court, despite a demonstration of indigency, refused to grant IFP status. The Court of Criminal Appeals was responsive to these complaints. See Lucas v. State, 597 So. 2d 759, 760 (Ala. Crim. App. 1992) (reversing denial of IFP status when

10

1121399

"there has never been any more than $31.47 in the petitioner's account at any one time" and the filing fee was $95); Robinson v. State, 629 So. 2d 5, 5 (Ala. Crim. App. 1993) (reversing denial of IFP status when prisoner's IFP declaration "states that the only money available to the appellant is $6.25, which is in his prison account"); Stafford v. State, 647 So. 2d 102 (Ala. Crim. App. 1994) (reversing denial of IFP status when filing fee was $110, prisoner's account contained $91.83 at the time of filing, the highest monthly balance in the account in the previous nine months was $104.33, and the average balance for that period was $63.15); Griggs v. State, 659 So. 2d 1044 (Ala. Crim. App. 1995) (reversing denial of IFP status when prisoner had only $1.10 in his inmate account when he filed his Rule 32 petition); Powell v. State, 674 So. 2d 1259, 1260 (Ala. Crim. App. 1995) (reversing denial of IFP status when prisoner had $1.00 in his prison account when he attempted to file the petition, the filing fee was $110, and thus "it appear[ed] that the appellant [was] indigent"); Hawkins v. State, 675 So. 2d 1359 (Ala. Crim. App. 1995) (reversing denial of IFP status because "[f]rom examining the appellant's prison account balances, we conclude that the

11

appellant is indigent"); Malone v. State, 687 So. 2d 218 (Ala. Crim. App. 1996) (reversing denial of IFP status when prisoner showed a balance of $15.04 in his prison account on the filing date, the maximum balance in the account over the previous four months was $60.21, and the filing fee was $110); Cummings v. State, 687 So. 2d 1290 (Ala. Crim. App. 1996) (reversing denial of IFP status when prisoner had $31.49 in his prison account when he filed the petition and the filing fee was $110); Ex parte Coleman, supra (reversing denial of IFP status where certificate attached to IFP declaration showed $.29 in inmate's prison account); Ex parte Ferrell, 819 So. 2d 83 (Ala. Crim. App. 2001) (finding that prisoner satisfied definition of indigency in Rule 6.3(a) when he had a balance of $.17 in his prison account on the filing date, the maximum balance in the account in prior months was $40, and the filing fee was $140); and Ex parte Spence, 819 So. 2d 106, 106 (Ala. Crim. App. 2001) (ordering the trial court to allow the petitioner "to file his Rule 32 petition without the prepayment of a filing fee" where his inmate account had $2.06 on deposit at the time of filing).

During that period the Court of Criminal Appeals uniformly granted IFP status when the balance in an inmate's prison account on the date the Rule 32 petition was filed was less than the filing fee and the prisoner's account balance had never exceeded the filing fee in previous months. The opinions of this Court affirmed these principles. In Ex parte Hurth, 764 So. 2d 1272 (Ala. 2000), the trial court relied on a "could-have-saved" argument to deny the petitioner IFP status: "'The Court has reviewed the petitioner's prison fund. The defendant can save the usual [amount] deposited to his account until he has sufficient funds to pay a filing fee in this case. Petition to proceed in forma pauperis is denied.'" Hurth, 764 So. 2d at 1273. Although Hurth's account statement showed an average monthly deposit of $23.57, this Court did not agree with the trial court that Hurth was not indigent because he "could have" saved that amount for six months to accumulate the $140 filing fee. Instead we ordered the trial court to approve Hurth's IFP application. Our indigency analysis relied primarily upon Hurth's financial position at the time he filed his Rule 32 petition.

> "[T]he facts before this Court indicate that Hurth was indigent when he filed his petition for

post-conviction relief. See, e.g., <u>Malone v. State</u>, 687 So. 2d 218, 219 (Ala. Crim. App. 1996) (holding that the petitioner was indigent -- his prison fund had shown a balance of $15.04 on the day before he filed his Rule 32 petition, and his account had never contained more than $60.21 during the four months before he filed his petition)."

<u>Hurth</u>, 764 So. 2d at 1274.

In <u>Ex parte Beavers</u>, supra, the prisoner's sister sent him $10 per week, his account balance at time he filed his Rule 32 petition was zero, and the filing fee was $140. Although Beavers theoretically could have saved the $140 filing fee from deposits received in prior months, we nonetheless reversed the trial court's order denying him IFP status.

"Although Beavers's <u>in forma pauperis</u> declaration indicated that his sister sent him $10 per week, the accompanying certificate indicated that he had a zero balance in his prison account on the day he filed his Rule 32 petition. Thus, the evidence before us suggests that Beavers was, in fact, indigent."

779 So. 2d at 1224-25. Finally, in <u>Ex parte Dozier</u>, 827 So. 2d 774, 776 (Ala. 2002), we held that a petitioner who "had a zero balance in his prison account when he filed his Rule 32 petition" was unable to pay a $140 filing fee despite the fact, as the dissent pointed out, that the prisoner had spent

14

1121399

over \$100 on canteen sales in each of the preceding two months. In *Dozier* we cited *Hurth* and *Beavers* and three similar opinions of the Court of Criminal Appeals -- *Ferrell*, *Coleman*, and *Malone*.

In *Hurth*, *Beavers*, and *Dozier*, we also stressed that refusing to accept Rule 32 filings from prisoners who, at the time of filing, lacked the funds to pay a filing fee raised troubling constitutional questions. In *Hurth* we stated:

> "'To impose any financial consideration between an indigent prisoner and the exercise of his right to sue for his liberty is to deny that prisoner equal protection of the laws.' *Hoppins v. State*, 451 So. 2d 363, 364 (Ala. Crim. App.1982) (citing *Smith v. Bennett*, 365 U.S. 708, 81 S. Ct. 895, 6 L. Ed. 2d 39 (1961)). 'While habeas corpus may, of course, be found to be a civil action for procedural purposes, it does not follow that its availability in testing the State's right to detain an indigent prisoner may be subject to the payment of a filing fee.' *Smith*, 365 U.S. at 712, 81 S. Ct. 895. (Citation omitted.) '[I]n order to prevent "effectively foreclosed access" [to the courts], indigent prisoners must be allowed to file appeals and habeas corpus petitions without payment of docket fees.' *Bounds v. Smith*, 430 U.S. 817, 822, 97 S. Ct. 1491, 52 L. Ed.2d 72 (1977)."

*Hurth*, 764 So. 2d at 1274. In *Beavers*, we repeated the quotations in *Hurth* from *Hoppins v. State*, 451 So. 2d 363, 364 (Ala. Crim. App. 1982), and *Bounds v. Smith* 430 U.S. 817

15

1121399

(1977). 779 So. 2d at 1224. In Dozier, we quoted Beavers' statement of these principles. 827 So. 2d at 775-76.

Thus, Robey is quite correct in arguing that the "could-have-saved" rule adopted in 2011 in Wyre directly conflicts with earlier cases decided both by this Court and by the Court of Criminal Appeals. The attorney general's brief does not dispute this point.

Effective August 1, 2002, this Court amended Rule 32.6(a) to require that the prison certificate accompanying the inmate's IFP declaration must state the amount on deposit "for the previous twelve (12) months." The addition of this phrase to the rule, however, cannot be viewed as authorizing the Court of Criminal Appeals to abandon the previous practice of determining indigency by comparing the filing fee with the balance in the inmate's account on the date of filing or the maximum balance in previous months. A year after the amendment, the Court of Criminal Appeals denied IFP status to an inmate facing a $149 filing fee whose prison account showed "monthly balances as high as $185." Ex parte Holley, 883 So. 2d 266, 269 (Ala. Crim. App. 2003). That decision is consistent with the prior practice of comparing the filing fee

16

with the maximum monthly balance in an inmate's account. Holley departed from precedent, however, in not also placing significant weight on the balance in the inmate's account at the time of the filing of the Rule 32 petition.

The maximum-monthly-balance rule, however, is a far cry from the 2011 decision in Wyre to base the determination of indigency on a comparison of the filing fee with the total deposits for the 12 months preceding the filing. The annual deposit total, for example, is 12 times the average monthly deposit. Using Wyre's annual-sum-of-deposits calculation as the threshold for indigency means that a prisoner like Robey, who had an average monthly income of $34.58, would not be considered indigent though he had only $27.45 in his account at the time of filing and was faced with the payment of a $206 filing fee, which represented almost six times his average monthly deposit. Wyre's drastic alteration of the method for calculating indigency is inconsistent with governing precedent of this Court interpreting Rule 6.3(a) and Rule 32.6(a).[3]

---

[3]Requiring a prisoner like Robey to save every penny of his income for six months to prepay a filing fee could also preclude access to the courts by allowing the statute of limitations for filing a Rule 32 petition to expire while the prisoner was saving for the filing fee. Rule 32.2(c), Ala. R.

17

C. Alternative Means of Deterring Meritless Filings

Judge Cole's concern that allowing indigent prisoners "to file a Rule 32 without cost" will overwhelm the courts with meritless filings may be alleviated under current law without denying equal protection of the laws to poor prisoners or abandoning the precedent of Hurth, Beavers, and Dozier. Since 1975 Alabama law has provided for the imposition of indigent filing fees after the fact. "The docket fee may be waived initially and taxed as costs at the conclusion of the case if the court finds that payment of the fee will constitute a substantial hardship." § 12-19-70(b), Ala. Code 1975. See Ex parte Coleman, 728 So. 2d at 707 (noting that a trial court "may protect itself from prolific litigants" by "tax[ing] the fee as costs at the end of the proceeding") (citing § 12-19-70(b)); Ex parte Beavers, 779 So. 2d at 1224 (noting the provision in § 12-19-70(b) for an initial waiver of the docket fee for an indigent prisoner followed by an imposition of the fee at the conclusion of the case); Castillo v. State, 786 So. 2d 1147, 1149 (Ala. Crim. App. 2000) (noting that "the court

_____

Crim. P. For a discussion of this point, see Ex parte Johnson, 123 So. 3d 953, 954 (Ala. 2013) (Moore, C.J., dissenting).

18

may properly tax the cost of the filing fee to the petitioner at the conclusion of the case, even if the petitioner has previously been determined to be indigent"); and <u>Neal v. State</u>, 803 So. 2d 586, 588 (Ala. Crim. App. 2001) (noting that "docket fees can be waived for indigent petitioners because of the processes that allow an indigent inmate to repay those costs").

In 2002 this Court amended Rule 32.6(a) to add language allowing for after-the-fact recovery of indigent filing fees:[4]

> "If the application to proceed in forma pauperis is granted, the filing fee shall be waived. If, upon final disposition of the petition, the court finds that all of the claims for relief are precluded for any of the reasons stated in Rule 32.2, it may assess the filing fee, or any portion thereof, and <u>order the correctional institution</u> having custody of the petitioner <u>to withhold 50% of all moneys</u> the institution then has on deposit for the petitioner, or receives in the future for the petitioner, <u>until the filing fee</u> that has been assessed by the court <u>has been</u> collected and <u>paid in full</u>."

(Emphasis added.) Thus, a prisoner who files a meritless petition is subject to a lien on his inmate account of 50% of future deposits until the filing fee is paid in full. Section 12-19-70(b) and the more detailed recovery language of Rule

---

[4]The language was subsequently moved to Rule 32.7(e), Ala. R. Crim. P. See discussion infra.

32.6(a) work together to provide that an indigent inmate who files a meritless petition is liable for repayment of the filing fee from his prison account. See Clemons v. State, 55 So. 3d 314, 334 & n.8 (Ala. Crim. App. 2003) (noting that "[s]ection 12-19-70, Ala. Code 1975, applies to Rule 32 petitions" and quoting from the recovery section of Rule 32.6(a)). Effective November 28, 2012, the recovery language in Rule 32.6(a) was moved to Rule 32.7(e), Ala. R. Crim. P. ("Assessment of Filing Fee"). In addition to the preclusion grounds of Rule 32.2, the new Rule 32.7(e) added two additional grounds for recovery of the filing fee, namely that the claims for relief "are lacking in specificity as required by Rule 32.6(b), or fail to state a claim of law or fact that is meritorious."

A petitioner whose claim survives summary dismissal under Rule 32.7(d), Ala. R. Crim. P., and is therefore entitled to an evidentiary hearing is not subject to recovery of the filing fee under Rule 32.7(e). Thus, a lien is placed on an indigent prisoner's account for recovery of a filing fee only if the petition itself is meritless. Section 12-19-70 and Rule 32.7(e), if implemented by the trial courts, provide a strong

disincentive for prisoners to file frivolous Rule 32 petitions. The practice of denying IFP status to prisoners who currently are financially unable to pay a filing fee, but who theoretically could have saved the money for the fee over the previous year, seems incompatible with the plain language of Rule 6.3(a). The Wyre rule also places an obstacle in the path of poor prisoners that those with more assets do not face, thus raising the constitutional issues that this Court identified in Hurth, Beavers, and Dozier.

In 1996, concerned about the rising tide of prisoner litigation, Congress passed the Prison Litigation Reform Act ("PLRA"). A section of the PLRA, codified at 28 U.S.C. § 1915, requires that an indigent prisoner, "when funds exist," pay 20% of the balance in the inmate's account as a down payment on a filing fee. 28 U.S.C. § 1915(b)(1). Twenty per cent of the funds in the inmate's prison account are requisitioned every month thereafter, so long as the balance in the account is above $10, until the fee is paid in full. 28 U.S.C. § 1915(b)(2). Rather than foreclosing an indigent inmate from filing a petition until the full filing fee has been saved, the PLRA, like Rule 32.7(e), allows recovery of the fee after

1121399

the conclusion of the case, thus eliminating access-to-the-courts and equal-protection issues.[5] The PLRA specifically emphasizes that "[i]n no event shall a prisoner be prohibited from bringing a civil action ... for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). The federal policy of allowing indigents freely to file petitions and then providing for recovery of the filing fee by an assessment against the inmate's account at the conclusion of the case had a noticeable deterrent effect. "The [PLRA] has been highly successful in reducing litigation, triggering a forty-three percent decline over five years, notwithstanding the simultaneous twenty-three percent increase in the

_____

[5]The attorney general argues that federal law requires a showing that a prisoner's petition has merit before IFP status will be granted on an access-to-the-courts claim. State's brief, at 10-14. Under Alabama law, however, a trial court does not have subject-matter jurisdiction to consider the merits of a Rule 32 petition until the IFP issue has been resolved and the filing fee has been either paid or waived. Ex parte Carter, 807 So. 2d 534, 536-37 (Ala. 2001). In any event, the equal-protection issue, which is distinct from an access-to-the-courts claim, is also fully implicated by the Wyre rule.

22

incarcerated population." Margo Schlanger, <u>Inmate Litigation</u>, 116 Harv. L. Rev. 1555, 1694 (2003).[6]

Enforcing the provisions of Rule 32.7(e) and § 12-19-70 is wiser in my view than leaving in place a barrier to filing -- the <u>Wyre</u> rule -- that is constitutionally questionable, unspecified in rule or statute, and incompatible with this Court's decisions on this issue.

### IV. <u>Remedy</u>

Because <u>Wyre</u> is inconsistent with our prior cases on determining indigency, Robey, in my opinion, is entitled to relief. However, the proper remedy is not obvious. After the Court of Criminal Appeals denied Robey's petition for a writ of mandamus, he did not have the option of asking this Court to correct that ruling: "If an original petition for extraordinary relief has been denied by the court of appeals, review may be had by filing a similar petition in the supreme court (and, in such a case, in the supreme court the petition shall seek a writ directed to the trial judge)." Rule

---

[6]In 2013, the Alabama Legislature enacted the Alabama Prisoner Litigation Reform Act ("APLRA"), § 14-15-1 et seq., Ala. Code 1975. Although similar in substance to the PLRA, the APLRA does not apply to Rule 32 petitions. § 14-15-2, Ala. Code 1975.

1121399

21(e)(1), Ala. R. App. P. Bound by Rule 21, Robey had no choice but to direct his petition in this Court to the trial judge rather than to the Court of Criminal Appeals. Thus, although Robey had a clear legal right to have his IFP application considered under the proper legal standard, the trial judge, obeying the Court of Criminal Appeals in applying Wyre, cannot be said to have had an "imperative duty" to disregard Wyre and adopt our controlling precedent.

Under the peculiar posture of this case, I would decline to issue a writ of mandamus to the trial judge, who followed what he understood to be valid direction from the Court of Criminal Appeals. Instead, I would order the trial court to reconsider Robey's IFP application in keeping with the governing precedent expounded in Hurth, Beavers, and Dozier, and the available remedies in § 12-19-70 and Rule 32.7(e).